## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-----------------------------------------------------x
In re                                     :    Chapter 11
                                          :
Rural/Metro Corporation, et al.,[1]       :    Case No. 13-11952 (    )
                                          :
                    Debtors.              :    (Joint Administration Pending)
-----------------------------------------------------x
```

## APPLICATION FOR AN ORDER APPOINTING DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 105(a) AND DEL. BANKR. L.R.2002-1(f)

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby move for entry of an order, substantially in the form of Exhibit C hereto (the "**Retention Order**") pursuant to section 156(c) of title 28 of the United States Code and section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "**Bankruptcy Code**"), appointing Donlin, Recano & Company, Inc. ("**DRC**") as claims and noticing agent in the Debtors' chapter 11 cases (the "**Section 156(c) Application**"). In support of the Section 156(c) Application, the Debtors rely upon and incorporate by reference the Declaration of Stephen Farber in Support of Chapter 11 Petitions and First Day Pleadings (the "**Farber Declaration**"), which was filed with the Court concurrently herewith, and the affidavit of Colleen McCormick in support of the Section 156(c) Application attached hereto as Exhibit B (the "**DRC Affidavit**"). In further support of the Section 156(c) Application, the Debtors, by and through their undersigned proposed co-counsel, respectfully represent as follows:

---

[1]    The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are listed in Schedule 1. The Debtors' headquarters are located at 9221 E. Via de Ventura, Scottsdale, AZ 85258.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.      On the date hereof (the "**Petition Date**"), Rural/Metro Corporation ("**Rural/Metro**") and each of the other Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors intend to continue in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The Debtors have requested that these chapter 11 cases be consolidated for procedural purposes.  As of the date hereof, no trustee, examiner or official committee has been appointed in any of the Debtors' cases.

3.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Farber Declaration.

## RELIEF REQUESTED

4.      This Section 156(c) Application is made pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") for an order appointing DRC to act as the claims and noticing agent and to assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtors' chapter 11 cases.  The Debtors' selection of DRC to act as the claims and noticing agent has satisfied the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, in that the Debtors have

01:13977052.1

obtained and reviewed engagement proposals from at least two (2) other court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that DRC's rates are competitive and reasonable given DRC's quality of services and expertise. The terms of retention are set forth in the Standard Claims Administration and Noticing Agreement annexed hereto as Exhibit A (the "**Engagement Agreement**"); provided, however, that the Debtors are seeking approval solely of the terms and provisions as set forth in this Application and the proposed order attached hereto.

5.    Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be tens of thousands of entities to be noticed. In view of the number of anticipated claimants and the complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent is both necessary and in the best interests of both the Debtors' estates and their creditors, as well as being required under Del. Bankr. L.R. 2002-1(f).

6.    DRC has acted as the claims and noticing agent in numerous cases of comparable size in the United States Bankruptcy Court for this District. See In re Handy Hardware Wholesale, Inc., Case No. 13-10060 (MFW) (Bankr. D. Del. Jan. 14, 2013); In re Prommis Holdings, LLC, et al., Case No. 13-10551 (BLS) (Bankr. D. Del. March 19, 2013); In re Saab Cars North America, Inc., Case No. 12-10344 (CSS) (Bankr. D. Del. March 2, 2012); In re: Hussey Copper Corp., et al., Case No. 11-13010 (BLS) (Bankr. D. Del. Sept. 28, 2011); In re: Townsends, Inc., et al., Case No. 10-14092 (CSS) (Bankr. D. Del. Dec. 21, 2010); In re Emivest Aerospace Corporation, Case No. 10-13391 (MFW) (Bankr. D. Del. Oct. 25, 2010); In re Wolverine Tube, Inc., et al., Case No. 10-13522 (PJW) (Bankr. D. Del. Nov. 2, 2010); In re The

Penn Traffic Company, et al., Case No. 09-14078 (PJW) (Bankr. D. Del. Dec. 19, 2009); In re

Butler Services International, Inc., .et al., Case No. 09-11914 (KJC) (Bankr. D. Del. June 3,

2009); In re: Everything But Water, LLC, et al., Case No. 09-10649 (MFW) (Bankr. D. Del. Feb.

27, 2009); In re: Lillian Vernon Corporation, et al., Case No. 08-10323 (BLS) (Bankr. D. Del.

Feb. 21, 2008); In re: Hancock Fabrics, Inc., et al., Case No. 07-10353 (BLS) (Bankr. D. Del.

April 13, 2007); In re Freedom Rings, LLC, Case No. 05-14268 (CSS) (Bankr. D. Del. Oct. 18,

2005).[2]

7.      By appointing DRC as the claims and noticing agent in these chapter 11

cases, the distribution of notices and the processing of claims will be expedited, and the clerk's

office will be relieved of the administrative burden of processing what may be an overwhelming

number of claims.  Concurrently herewith, the Debtors have filed the DRC Affidavit in support

of this Section 156(c) Application.

8.      This Section 156(c) Application pertains only to the work to be performed

by DRC under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule

2002-1(f), and any work to be performed by DRC outside of this scope is not covered by this

Section 156(c) Application or by any Order granting approval hereof.  Specifically, DRC will

perform the following tasks in its role as claims and noticing agent (the "**Claims and Noticing**

**Services**"), as well as all quality control relating thereto:

(a)     Prepare and serve required notices and documents in the chapter 11 cases
        in accordance with the Bankruptcy Code and the Federal Rules of
        Bankruptcy Procedure (the "**Bankruptcy Rules**") in the form and manner
        directed by the Debtors and/or the Court including (i) notice of the
        commencement of the chapter 11 cases and the initial meeting of creditors
        under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii)
        notices of transfers of claims, (iv) notices of objections to claims and

---

[2]     Because of the voluminous nature of the orders cited herein, they are not attached to the Section 156(c)
        Application.  Copies of these orders, however, are available on request of the Debtors' proposed counsel.

objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the chapter 11 cases;

(b)     Maintain an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, "**Schedules**"), listing the Debtors' known creditors and the amounts owed thereto;

(c)     Maintain (i) a list of all potential creditors, equity holders and other parties-in-interest; and (ii) a "core" mailing list consisting of all parties described in sections 2002(i), (j) and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party-in-interest or the Clerk;

(d)     Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim, after such notice and form are approved by this Court, and notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f)     For *all* notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(g)     Process all proofs of claim received, including those received by the Clerk's Office, and check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(h)     Maintain the official claims register for each Debtor (the "**Claims Registers**") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed:

(i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), (vi) the applicable Debtor, and (vii) any disposition of the claim;

(i)   Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(j)   Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(k)   Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of DRC, not less than weekly;

(l)   Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the claims register for the Clerk's review (upon the Clerk's request);

(m)  Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register;

(n)   Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtors or the Court, including through the use of a case website and/or call center;

(o)   If the case is converted to chapter 7, contact the Clerk's Office within three (3) days of the notice to DRC of entry of the order converting the case;

(p)   Thirty (30) days prior to the close of these cases, to the extent practicable, request that the Debtors submit to the Court a proposed Order dismissing DRC and terminating the services of such agent upon completion of its duties and responsibilities and upon the closing of these cases;

(q)   Within seven (7) days of notice to DRC of entry of an order closing the chapter 11 cases, provide to the Court the final version of the claims register as of the date immediately before the close of the chapter 11 cases; and

(r)   At the close of these cases, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's Office.

01:13977052.1

9.      The Claims Registers shall be opened to the public for examination without charge during regular business hours and on a case-specific website maintained by DRC.

10.     DRC shall not employ any past or present employee of the Debtors for work that involves the Debtors' bankruptcy cases.

11.     The Debtors respectfully request that the undisputed fees and expenses incurred by DRC in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(1)(A) and be paid in the ordinary course of business without further application to or order of the Court.  DRC agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee, if any, monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Court.

12.     Prior to the Petition Date, the Debtors provided DRC a retainer in the amount of $25,000.00.  DRC seeks to first apply the retainer to all pre-petition invoices, thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Engagement Agreement during the chapter 11 cases as security for the payment of fees and expenses under the Engagement Agreement.

13.     In connection with its retention as claims and noticing agent, DRC represents in the DRC Affidavit, among other things, that:

(a)    DRC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in the chapter 11 cases;

(b)    By accepting employment in the chapter 11 cases, DRC waives any rights to receive compensation from the United States government in connection with the Debtors' chapter 11 cases;

(c)    In its capacity as the claims and noticing agent in the chapter 11 cases, DRC will not be an agent of the United States and will not act on behalf of the United States; and

(d)    It is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

14.    To the extent that there is any inconsistency between this Application, the Retention Order and the Engagement Agreement, the Retention Order shall govern.

15.    This Section 156(c) Application complies with the *Protocol for the Employment of DRCs under 28 U.S.C. § 156(c)* and conforms to Section 156(c) Application typically submitted in this District. The Debtors have provided copies of this Section 156(c) Application to: (a) the U.S. Trustee; (b) Credit Suisse, AG, as the administrative agent under the Debtors' prepetition secured credit agreement and its counsel; (c) counsel to Wells Fargo, indenture trustee for the Debtors' senior unsecured notes; (d) counsel to certain of the Debtors' senior unsecured noteholders; and (e) the Debtors' fifty (50) largest unsecured creditors on a consolidated basis. The Debtors submit that, under the circumstances, no other or further notice is required.

WHEREFORE, the Debtors request entry of an order, in the form annexed hereto as Exhibit C, authorizing Donlin, Recano & Company, Inc. to act as claims and noticing agent for the maintenance and processing of claims and the distribution of notices.

Dated: August _4_, 2013
       Wilmington, Delaware

                                Rural/Metro Corporation, et al.
                                Debtors and Debtors in Possession

                                Stephen Farber
                                Authorized Signatory

### Schedule 1

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:

| | |
|---|---|
| Arizona EMS Holdings, Inc. (AZ) (7244) | Rural/Metro of Brewerton, Inc. (NY) (0912) |
| Beacon Transportation, Inc. (NY) (4028) | Rural/Metro of California, Inc. (DE) (8164) |
| Bowers Companies, Inc. (CA) (6465) | Rural/Metro of Central Alabama, Inc. (DE) (5348) |
| ComTrans Ambulance Service, Inc. (AZ) (6923) | Rural/Metro of Central Colorado, Inc. (DE) (6583) |
| Corning Ambulance Service, Inc. (NY) (5659) | Rural/Metro of Central Ohio, Inc. (DE) (2407) |
| Donlock, Ltd. (PA) (0659) | Rural/Metro of Greater Seattle, Inc. (WA) (6902) |
| E.M.S. Ventures, Inc. (GA) (3254) | Rural/Metro of Indiana, L.P. (DE) (9954) |
| Eastern Ambulance Service, Inc. (NE) (7359) | Rural/Metro of New York, Inc. (DE) (0083) |
| Eastern Paramedics, Inc. (DE) (1102) | Rural/Metro of Northern California, Inc. (DE) (3227) |
| Emergency Medical Transport, Inc. (AZ) (3878) | Rural/Metro of Northern Ohio, Inc. (DE) (8398) |
| EMS Ventures of South Carolina, Inc. (SC) (4174) | Rural/Metro of Ohio, Inc (DE) (0488) |
| Gold Cross Ambulance Service of PA, Inc. (OH) (9869) | Rural/Metro of Oregon, Inc. (DE) (3435) |
| Gold Cross Ambulance Services, Inc. (DE) (4792) | Rural/Metro of Rochester, Inc. (NY) (0148) |
| Lasalle Ambulance, Inc. (NY) (4422) | Rural/Metro of San Diego, Inc. (CA) (4132) |
| Medical Emergency Devices and Services (Meds), Inc. (AZ) (2218) | Rural/Metro of Southern California, Inc. (DE) (1679) |
| Mercury Ambulance Service, Inc. (KY) (8659) | Rural/Metro of Southern Ohio, Inc. (OH) (9303) |
| Metro Care Corp. (OH) (3994) | Rural/Metro of Tennessee, L.P. (DE) (3714) |
| National Ambulance & Oxygen Service, Inc. (NY) (9150) | Rural/Metro Operating Company, LLC (DE) (7563) |
| North Miss. Ambulance Service, Inc. (MS) (4696) | San Diego Medical Services Enterprise, L.L.C. (CA) (4136) |
| Pacific Ambulance, Inc. (CA) (7781) | Sioux Falls Ambulance, Inc. (SD) (4797) |
| Professional Medical Transport, Inc. (AZ) (6661) | Southwest Ambulance and Rescue of Arizona, Inc. (AZ) (9229) |
| R/M Arizona Holdings, Inc. (AZ) (6302) | Southwest Ambulance of Casa Grande, Inc. (AZ) (2807) |
| R/M Management Co., Inc. (AZ) (3444) | Southwest Ambulance of New Mexico, Inc. (NM) (5701) |
| R/M of Tennessee G.P., Inc. (DE) (0819) | Southwest Ambulance of Southeastern Arizona, Inc. (AZ) (8415) |
| R/M of Tennessee L.P., Inc. (DE) (0821) | Southwest Ambulance of Tucson, Inc. (AZ) (3618) |
| RMC Corporate Center, L.L.C. (AZ) (4546) | Southwest General Services, Inc. (AZ) (7537) |
| Rural/Metro (Delaware) Inc. (DE) (1572) | SW General Inc. (AZ) (4455) |
| Rural/Metro Corporation (AZ) (4388) | The Aid Ambulance Company, Inc. (DE) (4432) |
| Rural/Metro Corporation (DE) (6929) | The Aid Company, Inc. (IN) (8091) |
| Rural/Metro Corporation of Florida (FL) (4668) | Towns Ambulance Service, Inc. (NY) (8281) |
| Rural/Metro Corporation of Tennessee (TN) (9245) | Valley Fire Service, Inc. (DE) (6188) |
| Rural/Metro Fire Dept., Inc. (AZ) (3445) | W & W Leasing Company, Inc. (AZ) (1806) |
| Rural/Metro Mid-South, L.P. (DE) (4413) | WP Rocket Holdings, Inc. (DE) (9609) |

## EXHIBIT A

**Engagement Agreement**

01:13977052.1

**Donlin, Recano & Company, Inc.**

**STANDARD CLAIMS ADMINISTRATION AND NOTICING AGREEMENT**

**TERMS AND CONDITIONS**

**Donlin, Recano & Company, Inc.** (hereinafter called "DRC") agrees to provide Rural/Metro Corporation, *et al.* including but not limited to any and all bankruptcy cases filed by any affiliate of Rural/Metro Corporation, *et al.*, (hereinafter called the "Client") and Client agrees to purchase services upon the terms and conditions and in accordance with "Schedule A", attached hereto, and other provisions stated herein, including but not limited to services to be rendered by DRC in connection with solicitation, calculation and tabulation of votes under any plan of reorganization or liquidation (the "Voting Services"). The fees for Voting Services are to be mutually agreed upon by DRC and Client under a separate fee addendum to this agreement at the point in time that Client requests such Voting Services. Client agrees and understands that none of the services constitute legal advice.

**1. CHARGES:** All charges shall be based upon the time and materials incurred by DRC, billed at the DRC then prevailing standard rate unless another rate schedule is specifically and mutually agreed upon herein. DRC reserves its rights to adjust its standard rates in January of each year to reflect changes in the business and economic environment. In the event that rates are based other than on time and materials, and such other basis for rates is set forth herein, the Client agrees to pay, in addition to those rates, for all charges, incurred by DRC as a result of Client error or omission as determined by DRC. Such charges shall include but shall not be limited to re-runs and any additional clerical work, phone calls, travel expenses, or any other disbursements. When possible, DRC will notify Client in advance of any additional charges. Checks are accepted subject to collection and the date of collection shall be deemed the date of payment. Any check received from Client may be applied by DRC against any obligation owing by Client to DRC, and an acceptance by DRC of any partial payment shall not constitute a waiver of DRC's right to pursue the collection of any remaining balance. DRC requires advance deposits for all noticing, newspaper publishing or other significant expenditures as defined by DRC. In addition, Client shall reimburse DRC for all actual out-of-pocket expenses reasonably incurred by DRC. The out-of-pocket expenses may include, but are not limited to, postage, delivery services, travel, meals and other similar costs and expenses. In addition to all charges for services and materials hereunder, Client shall pay to DRC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by DRC or paid by DRC to taxing authorities. This provision, includes but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income. In the event the Client files for protection pursuant to Chapter 11 of title 11 of the United States Code, the parties intend that all fees and expenses due under this agreement shall be paid as administrative expenses of the Clients' chapter 11 estate(s). In the event the Clients' bankruptcy case(s) are converted to a Chapter 7 case(s), any unpaid fees and costs with respect to this Agreement shall be treated first as a Chapter 7 administrative expense claim and second as a Chapter 11 administrative expense claim. In the event DRC has performed pre-petition services and/or incurred pre-petition costs which have not otherwise been paid in full at the commencement of the bankruptcy case(s), Client covenants and agrees to file (or cause the filing of) with the court, at the option of DRC, either (i) a motion to assume this Agreement and cure any defaults (in the event DRC is retained pursuant to 28 U.S.C. §156(c)), or (ii) file a request for the payment of all such unpaid and outstanding fees and costs without prejudice to DRC's retention hereunder.

**2. TRANSPORTATION OF DATA:** Data submitted by the Client to DRC for processing shall be transported at the Client's risk and expense to and from the DRC office. In the event the Client fails to deliver the input data to DRC at the time scheduled, the Client agrees that DRC may extend, as necessary, the time for the completion of processing of such data. Client further agrees that the time for the completion or processing of such data may be extended because of the following holidays in addition to any Bank holidays recognized in the city in which DRC is located:  New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and

**Donlin, Recano & Company, Inc.**

Christmas Day. In any event, DRC does not warrant or represent that shipment or availability dates will be met, but will use its best efforts to do so. If DRC is required to stay open to perform required tasks on such days, an additional mutually agreed upon cost may be required by DRC.

**3. RETAINER & INVOICES**:   At the commencement of this engagement, the Client shall pay to DRC an advance payment retainer (the "Retainer") in the amount of $25,000.00  DRC may apply the Retainer to the payment of the final invoice from DRC for this engagement or to any other invoice in its absolute discretion. Invoices for pre-petition services shall be paid in full, and may be satisfied, in the absolute discretion of DRC, out of the Retainer, which shall be replenished upon notice thereof to the Client. DRC, in its absolute discretion, may suspend or discontinue services after filing of a petition if pre-petition invoices are not paid in full. DRC may require the Client to increase the Retainer if the average amount of monthly invoices for three consecutive months is 10% greater than the amount of the Retainer. Client shall pay the charges set forth in Schedule A, attached hereto. DRC shall invoice the Client monthly for all services rendered during the preceding month. Charges for a partial month's service shall be prorated based on a thirty (30) day month. Terms are net 20 days following the date of billing. Failure to pay any fees, costs or other amounts to DRC shall be a breach of this Agreement (a "Failure to Pay"). Notwithstanding anything else contained in this Agreement, in the event of a Failure to Pay, DRC reserves the right to withhold reports and materials of the Client, in addition to all other remedies available to DRC. Upon a Failure to Pay, DRC may assess a late charge at a rate of one and one-half percent (1-1/2%) per month or the highest rate permitted by law, whichever is less, on all unpaid amounts until paid in full. DRC shall also have the right, at its option, to terminate this agreement for non payment of invoices after 30 days from the date unpaid invoices are rendered (a "Non-Payment Breach"). If the invoice amount is disputed, notice shall be given to DRC within ten (10) days of receipt of the invoice by the Client. The undisputed portion of the invoice will remain due and payable. Late charges shall not accrue on any amounts in dispute. Notwithstanding anything contained in this agreement to the contrary, a Failure to Pay shall under no circumstances be construed as an agreement by DRC to reduce or waive DRC's fees and expenses. The Client shall not agree or otherwise consent to a unilateral reduction or waiver of DRC fees and expenses without the explicit written consent of DRC and any such agreement or consent to such reduction or waiver by the Client without DRC's explicit written consent shall be deemed null and void and constitute a breach of this Agreement (a "Material Breach"). Notwithstanding anything contained in this agreement to the contrary, upon the occurrence of a Material Breach, DRC shall have the right, at its option, to terminate this agreement upon five (5) business days notice to the Client.

**4. STORAGE**:  Client shall assume the risks and DRC shall not be responsible for any damages, liability or expenses incurred in connection with any delay in delivery of or damage to cards, disks, magnetic tapes or any input data furnished by Client unless DRC has agreed in writing to assume such responsibility. Forms storage at DRC beyond a normal 90 day supply will be billed at standard warehousing rates established by DRC.

**5. E-MAIL COMMUNICATIONS**:  DRC and the Client and its agents acknowledge that they may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus-free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents, whether received on disk or otherwise.

**6. SUPPLIES**: All supplies shall be furnished at Client's expense.

DRC | Donlin Recano

www.donlinrecano.com

**Donlin, Recano & Company, Inc.**

7. **WARRANTY AND RELIANCE**: Client acknowledges and agrees that DRC will take direction from the Client's representatives, employees, agents and/or professionals (collectively, the "Client Parties") with respect to services being provided under this Agreement. Client and DRC agree that DRC may rely upon, and the Client agrees to be bound by, any requests, advice or information provided by the Client Parties to the same extent as if such requests, advice or information were provided by the Client. DRC shall have the right to rely on the accuracy of all data provided by the Client and the Client Parties to DRC. Client is responsible for the accuracy of all programs, data and other information it submits to DRC (including all information for preparation of the Schedules of Assets and Liabilities ("Schedules") and Statements of Financial Affairs ("Statements"). All Schedules and Statements filed on behalf of, or by, the Client are reviewed and ultimately approved by the Client, and DRC bears no responsibility for the accuracy or contents therein. The DRC warranty under this agreement shall be limited to the re-running at its expense, of any inaccurate reports provided that such inaccuracies were caused solely as a result of performance hereunder and provided further that DRC shall receive written notice of such inaccuracies within thirty (30) days of delivery of such report. If said notice is not made to DRC within the prescribed time limit Client is due and liable for all charges. Client agrees that the foregoing constitutes the exclusive remedy available to it. Client agrees that the foregoing warranty is in lieu of all other warranties, express or implied, including but not limited to any implied warranty of merchantability, fitness or adequacy for any particular purpose or use, quality, productiveness or capacity.

8. **TERM**: This agreement shall be effective from the date upon which it is accepted by DRC as set forth herein and shall remain in force until terminated by either party upon thirty days' written notice to the other party or by DRC upon occurrence of a Non-Payment Breach or a Material Breach, as defined in paragraph 3 above. In the event that a chapter 7 trustee, chapter 11 trustee or chapter 11 liquidating trustee is appointed, this agreement will remain in effect until an order of the Bankruptcy Court is entered discharging DRC from service and responsibility under this Agreement. The payment obligation and the indemnity obligation set forth in sections 3 and 10 herein, respectively, shall survive termination of this Agreement. In the event this Agreement is terminated, DRC shall coordinate with the Client and, to the extent applicable, the Office of the Clerk of the Bankruptcy Court, for an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for such orderly transfer. Client agrees to pay for such services in accordance with DRC's then existing fees for such services. If termination of this Agreement occurs following entry of an order by the Bankruptcy Court approving DRC's retention under 28 U.S.C. § 156 (c), then the Client shall immediately seek entry of an order (in form and substance reasonably acceptable to DRC) that discharges DRC from service and responsibility under this Agreement and 28 U.S.C. § 156 (c).

9. **TERMS OF AGREEMENT**: The terms of this Agreement prevail over any and all terms contained in Client's purchase order or authorization and no waiver, discharge, or modification of the terms of this Agreement shall bind DRC unless in writing and signed by an authorized representative of DRC.

10. **INDEMNIFICATION**: The Client shall indemnify and hold DRC and its affiliates, officers, directors, agents, employees, consultants, and subcontractors (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, liabilities, costs, obligations, judgments, causes of action, charges (including, without limitation, costs of preparation and attorneys' fees) and expenses as incurred (collectively, "Losses"), arising out of or relating to (a) this Agreement or DRC's rendering of services pursuant hereto (including any erroneous instructions or information provided to DRC by the Client or the Client Parties for use in providing services under this Agreement), (b) any breach or alleged breach of this Agreement by Client, or (c) any negligence or willful or reckless actions or misconduct of Client or Client Parties with respect to this Agreement, other than Losses resulting solely from DRC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, "Losses" includes any liabilities resulting from claims by third persons against any Indemnified Parties. The Client shall notify DRC in writing promptly of the institution, threat or assertion of any claim of which the Client is aware with respect

**Donlin, Recano & Company, Inc.**

to the services provided by DRC under this Agreement. Such indemnity shall remain in full force and effect regardless of any investigation made by or on behalf of DRC and shall survive the termination of this Agreement until the expiration of all applicable statutes of limitation with respect to DRC's liabilities. Notwithstanding any provision in the Application or this Agreement to the contrary, the Client has no obligation to indemnify DRC, or provide contribution or reimbursement to DRC, for any claim or expense that is either (a) judicially determined (the determination having become final) to have arisen from DRC's gross negligence or willful misconduct, (b) a result of any breach of this Agreement by DRC, or (c) settled prior to a judicial determination as to DRC's gross negligence or willful misconduct, but determined by the Bankruptcy Court, after notice and a hearing, to be a claim or expense for which DRC should not receive indemnity, contribution or reimbursement under the terms of the Application and this paragraph of this Agreement. If, before the earlier of (a) the entry of an order confirming a chapter 11 plan in this case (that order having become a final order no longer subject to appeal), and (b) the entry of an order closing this chapter 11 case, DRC believes that it is entitled to the payment of any amounts by the Client(s) on account of the Clients' indemnification, contribution and/or reimbursement obligations under this paragraph of this Agreement, including without limitation the advancement of defense costs, DRC must file an application therefore in the Bankruptcy Court, and the Clients(s) may not pay any such amounts to DRC before entry of an order approving the payment.

11. **CONFIDENTIALITY:** Each of DRC and the Client, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five (5) business days' written notice to the other party, release the required information.

12. **OWNERSHIP OF PROGRAMS:** Unless otherwise agreed in writing, all programs developed by DRC in connection with any services to be performed under this Agreement shall remain the sole property of DRC. All programs and/or systems documentation in the possession of DRC which DRC has agreed in writing to return to the Client, prepared for the Client by DRC, shall be returned to the Client upon demand providing all charges for such programming and/or systems documentation have been paid in full.

13. **SYSTEMS IMPROVEMENTS:** DRC's policy is to provide continuous improvements in the quality of service to its clients. DRC, therefore, reserves the right to make changes in operating procedures, operating systems, programming languages, application programs, time period of accessibility, equipment, and the DRC data center serving the Client, so long as any such changes do not materially interfere with ongoing services provided to the Client in connection with the Client's chapter 11 case.

14. **UNUSUAL MEASURES:** Where the Client requires measures that are unusual and beyond the normal business practice and hours of DRC such as, but not limited to, CPA Audit, Errors and Omissions Insurance, and/or Off-Premises Storage of Data, the cost of such measures, if provided by DRC, shall be charged to the Client. Said charges may be required in advance if DRC deems it appropriate.

15. **JURISDICTION.** This Agreement is subject to the approval of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and such court shall retain jurisdiction over all matters regarding this Agreement.

16. **FORCE MAJEURE.** Whenever performance by DRC of any of its obligations hereunder is substantially prevented by reason of any act of God, strike, lock out or other industrial or transportational disturbance, fire, lack of materials, law, regulation or ordinance, war or war conditions, or by reasons of any other matter beyond DRC's reasonable control, then such performance shall be excused and this Agreement shall be deemed

**Donlin, Recano & Company, Inc.**

suspended during the continuation of such prevention and for a reasonable time thereafter.

**17. NOTICE.** Any notice or other communication required or permitted hereunder shall be in writing and shall be delivered personally, or sent by registered mail, postage prepaid, or overnight courier. Any such notice shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in the United States mail, or, if sent by overnight courier, one business day after delivery to such courier, as follows: if to DRC, to Donlin, Recano & Company, Inc., 419 Park Avenue South, Suite 1206, New York, New York 10016, Attention: Alexander Leventhal; if to the Client, to Mr. Stephen D. Farber, CFO, Rural/Metro Corporation, 9221 East Via de Ventura, Scottsdale, Arizona 85258.

**18. GOVERNING LAW.** This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to its conflict of laws provisions).

**19. SEVERABILITY.** All clauses and covenants contained in this Agreement are severable and in the event any of them are held to be invalid by any court, such clause or covenant shall be valid and enforced to the maximum extent as to which it may be valid and enforceable, and this Agreement will be interpreted as if such invalid clauses or covenants were not contained herein.

**20. ASSIGNMENT.** This Agreement and the rights and obligations of DRC and the Client hereunder shall bind and inure to the benefit of any successors or assigns thereto.

*[remainder of page intentionally blank]*



www.donlinrecano.com

**Donlin, Recano & Company, Inc.**

21. **GENERAL**:  The terms and conditions of this Agreement may be modified by DRC upon one (1) month's prior written notice to Client.  Client will not employ any DRC employee within two (2) years from the termination of this Agreement.  The term "this Agreement" as used herein includes any future written amendments, modifications, supplements or schedules duly executed by Client and DRC.  This Agreement contains the entire agreement between the parties with respect to the subject matter hereof.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one in the same instrument. A facsimile copy, photocopy or imaged copy of this Agreement shall be considered an original copy. The Client shall file an application with the Bankruptcy Court seeking approval of this Agreement (the "Application"), the form and substance of which shall be reasonably acceptable to DRC.  If an order is entered approving such Application (the "Order"), any discrepancies between this Agreement, the Application and the Order shall be controlled by the Application and Order.

Accepted and Approved:

Donlin, Recano & Company, Inc.
419 Park Avenue South
New York, New York 10016

By:            _COLLEEN McCORMICK_

Signature:     _Colleen McCormick_

Title:         _CRO_

Date:          _6/27/13_


Accepted and Approved:

Rural/Metro Corporation, *et al.*

By:            Mr. Stephen D. Farber

Signature:

Title:         CFO

Date:          _7-1-13_


This Agreement is subject to the terms and conditions set forth herein.  Client acknowledges reading and understanding it and agrees to be bound by its terms and conditions and further agrees that it is the complete and exclusive statement of the Agreement between the parties, which supersedes all proposals oral or written and other prior communications between the parties relating to the subject matter of this Agreement.

Donlin, Recano & Company, Inc.

## SCHEDULE A
Rural/Metro Corporation, *et al.*
### Fee Schedule

| Data Services Pricing | Proposed Hourly Rate | Standard Hourly Rate |
|---|---|---|
| Senior Bankruptcy Consultant | $195 | $295 |
| Consultant | $175-$195 | $250-$285 |
| Case Manager | $129-$170 | $185-$245 |
| Technology/Programming Consultant | $108-$130 | $155-$195 |
| Analyst | $77-$122 | $110-$175 |
| Clerical | $31-$45 | $45-$65 |

| Noticing Services | | |
|---|---|---|
| Laser Printing/ Photocopies | $.08 per Image | (Normally $.10 per Image) |
| Personalization/ Labels | WAIVED | |
| Fax (Incoming) | WAIVED | |
| Fax Noticing | $.09 per Page | |
| Postage and Overnight Delivery | At Cost | |
| Electronic Noticing | $.02 per Page | |
| Publication Services | At Cost | |

| Website/Database Services | |
|---|---|
| Website Development | WAIVED |
| Web Hosting | WAIVED |
| License Fee | WAIVED |
| Database Maintenance | $.08 per Creditor per Month |
| Image Store | $.01 per Image per Month |
| Permitted Users | $200 per User per Month |
| | (WAIVED for the First 6 Users) |
| Document Imaging | $.10 per Image [1] |

| Solicitation, Balloting and Tabulation Services | |
|---|---|
| Set-up Tabulation & Vote Verification | Applicable Consulting Fees Only |
| Print and Mail Ballots | Subject to Requirements of |
| | Disclosure Statement and Plan |
| Solicitation and Notification on Public Securities Holders | Varies Upon Requirements |
| Plan Disbursements | Quoted Upon Request |

| Standard Reporting | |
|---|---|
| Claims registers, claims reports, service lists, Schedules, SOFA's etc. | Applicable Consulting Fees Only |

| VDR and Litigation Tracking | |
|---|---|
| DRC DocuLinks™ Virtual Data Room Services | Quoted Upon Request |
| DRC DocuLinks for Litigation Tracking | Quoted Upon Request |

| Call Center | |
|---|---|
| 24/7 Global Call Center | Standard Hourly Rates [2] |

---

[1] An additional $0.10 per image is charged for optical character recognition imaging.
[2] Customized based on specific case needs – 1,200 operator capacity – automated options available.

6/27/2013

ᗡᖇᑕ Donlin Recano

www.donlinrecano.com

## Donlin, Recano & Company, Inc.

| Miscellaneous | |
|---|---|
| Out-of-Pocket Expenses (including any required travel) | At Cost |
| Other Charges | Mutually Agreed Upon in Advance |

## EXHIBIT B

**DRC Affidavit**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

-----------------------------------------------------x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| Rural/Metro Corporation, et al.,[1] | : | Case No. 13-_____ (  ) |
| | : | |
| Debtors. | : | (Joint Administration Pending) |

-----------------------------------------------------x

### AFFIDAVIT OF COLLEEN MCCORMICK IN SUPPORT OF APPLICATION FOR AN ORDER APPOINTING DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT FOR THE DEBTORS PURSUANT TO 28 U.S.C. § 156(c), 11 U.S.C. § 105(a), FEDERAL RULE OF BANKRUPTCY PROCEDURE 2002(f) AND LOCAL RULE 2002-1(f)

STATE OF NEW YORK         )
                                  ) ss:
COUNTY OF NEW YORK     )

Colleen McCormick being duly sworn, deposes and says as follows:

1.      I am the Chief Operating Officer of Donlin, Recano & Company, Inc. ("**DRC**"), a chapter 11 administrative services firm, whose offices are located at 419 Park Avenue South, New York, New York 10016.

2.      I submit this Affidavit in support of the Application (the "**Application**")[2] for an Order Appointing Donlin, Recano & Company, Inc., as Claims and Noticing Agent (the "**Claims and Noticing Agent**") for the Debtors pursuant to 28 U.S.C. § 156(c), 11 U.S.C. § 105(a) and Local Rule 2002-1(f). Except as otherwise noted, I have personal knowledge of the facts contained in this Affidavit.

---

[1]     The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are listed in Schedule 1. The Debtors' headquarters are located at 9221 E. Via de Ventura, Scottsdale, AZ 85258.

[2]     Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

3.    As custodian of the court's records pursuant to 28 U.S.C. § 156(c), DRC will perform, at the request of the Office of the Clerk of the Court (the "**Clerk**"), the noticing and claims related services specified in the Application and the Engagement Agreement. In addition, at the Debtors' request, DRC will perform such other noticing, claims, administrative, technical and support services specified in the Application and the Engagement Agreement.

4.    DRC is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, and facilitating other administrative aspects of chapter 11 cases. DRC has provided identical or substantially similar services in other chapter 11 cases filed in this District and elsewhere, including, among others:  In re Handy Hardware Wholesale, Inc., Case No. 13-10060 (MFW) (Bankr. D. Del. Jan. 14, 2013); In re Prommis Holdings, LLC., et al., Case No. 13-10551 (BLS) (Bankr. D. Del. Mar. 19, 2013); In re Saab Cars North America, Inc., Case No. 12-10344 (CSS) (Bankr. D. Del. Mar. 2, 2012); In re: Hussey Copper Corp., et al., Case No. 11-13010 (BLS) (Bankr. D. Del. Sept. 28, 2011); In re: Townsends, Inc., et al., Case No. 10-14092 (CSS) (Bankr. D. Del. Dec. 21, 2010); In re: Emivest Aerospace Corporation, Case No. 10-13391 (MFW) (Bankr. D. Del. Oct. 25, 2010); In re Wolverine Tube, Inc., et al., Case No. 10-13522 (PJW) (Bankr. D. Del. Nov. 2, 2010); In re: The Penn Traffic Company, et al., Case No. 09-14078 (PJW) (Bankr. D. Del. Dec. 19, 2009); In re: Butler Services International, Inc., .et al., Case No. 09-11914 (KJC) (Bankr. D. Del. June 3, 2009); In re: Everything But Water, LLC, et al., Case No. 09-10649 (MFW) (Bankr. D. Del. Feb. 27, 2009); In re: Lillian Vernon Corporation, et al., Case No. 08-10323 (BLS) (Bankr. D. Del. Feb. 21, 2008); In re: Hancock Fabrics, Inc., et al., Case No. 07-10353 (BLS) (Bankr. D. Del. Apr. 13, 2007); In re Freedom Rings, LLC, Case No. 05-14268 (CSS) (Bankr. D. Del. Oct. 18, 2005).

5.    DRC represents, among other things, that:

- 2 -

(a)  it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and noticing agent in these chapter 11 cases;

(b)  by accepting employment in these chapter 11 cases, DRC waives any right to receive compensation from the United States government in its capacity as the claims and noticing agent in these chapter 11 cases;

(c)  in its capacity as the claims and noticing agent in these chapter 11 cases, it is not an agent of the United States and is not acting on behalf of the United States; and

(d)  it will not employ any past or present employees of the Debtors in connection with its work as the claims and noticing agent in these chapter 11 cases.

6.     To the best of my knowledge and belief, and based solely upon information provided to me by the Debtors, and except as provided herein, neither DRC, nor any employee of DRC, holds nor represents any interest materially adverse to the Debtors, their estates or their creditors with respect to matters upon which DRC is to be engaged.

7.     To the best of my knowledge and belief, and based solely upon information provided to me by the Debtors and except as provided herein, neither DRC, nor any employee of DRC, has any materially adverse connections to the Debtors, their creditors or equity interest holders, or other relevant parties, their respective attorneys and accountants, any United States Bankruptcy Judge for the District of Delaware, the United States Trustee for the District of Delaware, or any person employed by that office of the United States Trustee, that would conflict with the scope of DRC's retention or would create any interest adverse to the Debtors' estates or any other party-in-interest.

8.     The Debtors have thousands of unsecured and secured creditors and, from time to time, DRC may have represented certain of those creditors in completely unrelated matters. Proposed bankruptcy counsel for the Debtors has provided me with a list of the Debtors'

- 3 -

creditors and other parties-in-interest (the "**Conflicts List**") that it received from the Debtors. I have caused an examination of these records to be made to determine which, if any, of the parties on the Conflicts List, DRC may have represented in the past or may be representing at the present time in totally unrelated matters. This search has disclosed that, to the best of my present knowledge, DRC has not in the past and is not currently representing any of the parties on the Conflicts List. The Debtors intend to file an application pursuant to 11 U.S.C. §§ 327(a), 330 and 331 and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 for an order authorizing the employment and retention of DRC as administrative agent for the Debtors.

9.      In addition, DRC has identified numerous vendors appearing on the Conflicts List that are also vendors of DRC, but DRC has not in the past, and is not currently, representing any of those vendors.

10.     I have been advised that DRC's Director of Business Development, Dan McElhinney, was formerly employed by Debtors' proposed bankruptcy counsel, Willkie Farr & Gallagher LLP ("**WF&G**") from September 1999 to July 2006. While employed at WF&G, Mr. McElhinney did not work on any matters involving the Debtors nor was Mr. McElhinney employed by WF&G when these chapter 11 cases were filed. DRC will not employ any past or present employee of the Debtors for work that involves the Debtors' bankruptcy proceedings.

11.     DRC is a division of DF King Worldwide ("**King Worldwide**"). King Worldwide is a global financial communications and stakeholder management company. Within the King Worldwide corporate structure, DRC operates as a separate, segregated business unit. Given the legal and operational separateness of DRC from King Worldwide, DRC does not believe that any relationships that King Worldwide and its divisions maintain would create an

- 4 -

interest of DRC that would be materially adverse to the Debtors' estates or any class of creditors or equity security holders.

12.     Since the Debtors have not yet filed a full list of its creditors, there may be other creditors of the Debtors that DRC may have or may be presently representing, but in no event is DRC representing any other creditor with respect to the Debtors' bankruptcy proceeding.  To the extent I become aware of DRC having represented any other creditors of the Debtors, I will file a supplemental affidavit advising the Court of the same.  To the extent that DRC discovers any facts bearing on matters described herein, DRC will supplement information contained herein.

13.     Notwithstanding anything contained herein, as part of its diverse business, DRC is the noticing, claims and balloting agent for debtors in numerous cases involving many different creditors (including taxing authorities), professionals, including attorneys, accountants, investment bankers and financial consultants, some of which may be creditors or represent creditors and parties-in-interest in these chapter 11 cases.  In addition, DRC has in the past and will likely in the future continue working with or against other professionals involved in these chapter 11 cases in matters unrelated to these chapter 11 cases.  Based upon my current knowledge of the parties involved, and to the best of my knowledge, none of these business relations constitute interests adverse to that of the creditors, or the Debtors' estates, with respect to the matter upon which DRC is to be engaged.  Additionally, DRC employees may, in the ordinary course of their personal affairs, have relationships with certain creditors of the Debtors.  However, to the best of my knowledge, such relationships, to the extent they exist, are of a personal nature and completely unrelated to these chapter 11 cases.

14.     Based upon the information available to me, I believe that DRC is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, in that DRC and its

personnel: (a) are not creditors, equity security holders or insiders of the Debtors; (b) are not and were not, within two years before the date of the filing of these cases, a director, officer or employee of the Debtor; and (c) do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.  Prior to the filing of the chapter 11 cases, in addition to paying any outstanding amounts due and owing in connection with prepetition services, the Debtors paid DRC a retainer of $25,000.00.

15.    In performing the services identified above, DRC will charge the rates set forth in Schedule A to the Engagement Agreement annexed to the Application as <u>Exhibit A</u>.  The rates set forth therein are as favorable and reasonable as the prices DRC charges in cases in which it has been retained to perform similar bankruptcy related services.

16.    DRC will comply with all requests of the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

Colleen McCormick
Chief Operating Officer
Donlin, Recano & Company, Inc.

Sworn to before me this
30th day of July 2013

Notary Public

WILLIAM ANDREW LOGAN
NOTARY PUBLIC, STATE OF NEW YORK
NO. 02LO6103254
QUALIFIED IN NEW YORK COUNTY
COMMISSION EXPIRES...Dec 22, 2015

- 7 -

# EXHIBIT C

**Proposed Form of Order**

01:13977052.1

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

---------------------------------------------------x
|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| Rural/Metro Corporation, et al.,[1] | : | Case No. 13-11952 (   ) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : | Re: Docket No. ___ |
---------------------------------------------------x

## ORDER AUTHORIZING RETENTION AND APPOINTMENT OF DONLIN, RECANO & COMPANY, INC. AS CLAIMS AND NOTICING AGENT UNDER 28 U.S.C. § 156(c), 11 U.S.C. § 105(a) AND DEL. BANKR. L.R.2002-1(f)

Upon the application (the "**Section 156(c) Application**") of the debtors and debtors in possession in the above-captioned cases (the "**Debtors**"), for an order authorizing the retention and appointment of Donlin, Recano & Company, Inc. ("**DRC**") as claims and noticing agent, under 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code[2] and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") to, among other things, (i) distribute required notices to parties in interest, (ii) receive, maintain, docket and otherwise administer the proofs of claim filed in the Debtors' chapter 11 cases, and (iii) provide such other administrative services – as required by the Debtors - that would fall within the purview of services to be provided by the Clerk's Office; and upon the affidavit of Colleen McCormick submitted in support of the Section 156(c) Application; and the Debtors having estimated that there are tens of thousands of creditors in these chapter 11 cases, many of which are expected to file proofs of claim, and it appearing

---

[1]    A list of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number is attached as Schedule 1 to the Declaration of Stephen Farber in Support of Chapter 11 Petition and First Day Pleadings [Docket No. 2] and at www.donlinrecano.com/rmc.  The Debtors' headquarters are located at 9221 E. Via de Ventura, Scottsdale, AZ 85258.

[2]    Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

that the receiving, docketing and maintaining of proofs of claim would be unduly time consuming and burdensome for the Clerk; and the Court being authorized under 28 U.S.C. §156(c) to utilize, at the Debtors' expense, outside agents and facilities to provide notices to parties in title 11 cases and to receive, docket, maintain, photocopy and transmit proofs of claim; and the Court being satisfied that DRC has the capability and experience to provide such services and that DRC does not hold an interest adverse to the Debtors or the estates respecting the matters upon which it is to be engaged; and good and sufficient notice of the Section 156(c) Application having been given; and no other or further notice being required; and it appearing that the employment of DRC is in the best interests of the Debtors, their estates and creditors; and the Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and sufficient cause appearing therefor; it is hereby

ORDERED, ADJUDGED, and DECREED that:

1.      The 156(c) Application is granted to the extent set forth herein.

2.      The Debtors are authorized to retain DRC effective as of the Petition Date under the terms of the Engagement Agreement, and DRC is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in these chapter 11 cases, and all related tasks, all as described in the Section 156(c) Application (the "**Claims and Noticing Services**").

3.      DRC shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and directed to maintain official claims registers for each of the Debtors and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk.

4.      DRC is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

5.      DRC is authorized to take such other action to comply with all duties set forth in the Section 156(c) Application.

6.      The Debtors are authorized to compensate DRC in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by DRC and the rates charged for each, and to reimburse DRC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for DRC to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      DRC shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee, if any, monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices.

8.      In the event of a dispute, the parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices, and that the parties may seek resolution of the matter from the Court if resolution is not achieved.

9.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of DRC under this Order shall be an administrative expense of the Debtors' estates.

10.     DRC may apply its retainer to all pre-petition invoices, which retainer shall be replenished to the original retainer amount, and thereafter, DRC may hold its retainer under the

Engagement Agreement during the chapter 11 cases as security for the payment of fees and expenses under the Engagement Agreement.

11.    The Debtors shall indemnify DRC under the terms of the Engagement Agreement (as modified by this Order).

12.    DRC shall not be entitled to indemnification, contribution or reimbursement pursuant to the Engagement Agreement for services other than the services provided under the Engagement Agreement, unless such services and the indemnification, contribution or reimbursement therefore are approved by the Court.

13.    Notwithstanding anything to the contrary in the Engagement Agreement, the Debtors shall have no obligation to indemnify DRC, or provide contribution or reimbursement to DRC, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from DRC's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of DRC's contractual obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to In re United Artists Theatre Co., et al., 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which DRC should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement as modified by this Order.

14.    The portion of Paragraph 3 of the Engagement Letter addressing late charges shall be null, void and of no further force and effect for post-petition services rendered by DRC.

15.    If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal), or (ii) the entry

of an order closing these chapter 11 cases, DRC believes that it is entitled to the payment of any amounts by the Debtors on account of the Debtors' indemnification, contribution and/or reimbursement obligations under the Engagement Agreement (as modified by this Order), including without limitation the advancement of defense costs, DRC must file an application therefore in this Court, and the Debtors may not pay any such amounts to DRC before the entry of an order by this Court approving the payment.  This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by DRC for indemnification, contribution or reimbursement, and not a provision limiting the duration of the Debtors' obligation to indemnify DRC.  All parties in interest shall retain the right to object to any demand by DRC for indemnification, contribution or reimbursement.

16.     In the event DRC is unable to provide the services set out in this order, DRC will immediately notify the Clerk and Debtors' attorney and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and Debtors' attorney.

17.     The Debtors may submit a separate retention application, pursuant to 11 U.S.C. § 327 and/or any applicable law, for work that is to be performed by DRC that is not specifically authorized by this Order.

18.     The Debtors and DRC are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Section 156(c) Application.

19.     Notwithstanding any term in the Engagement Agreement to the contrary, the Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

20.     DRC shall not cease providing claims processing services during the chapter 11 cases for any reason, including nonpayment, without an order of the Court.

21.     In the event of any inconsistency between the Engagement Agreement, the Section 156(c) Application and the Order, the Order shall govern.

Dated: _____, 2013
        Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE