IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------x
In re                              :   Chapter 11
                                   :
Rural/Metro Corporation, et al.,¹  :   Case No. 13-11952 (    )
                                   :
              Debtors.             :   (Joint Administration Pending)
------------------------------------------------x
```

### DEBTORS' MOTION FOR ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 363(c) AND 1107(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6003 AND 6004(h): (I) AUTHORIZING DEBTORS TO (A) CONTINUE INSURANCE POLICIES AND AGREEMENTS RELATING THERETO, (B) HONOR CERTAIN PREPETITION OBLIGATIONS IN RESPECT THEREOF, AND (C) CONTINUE PERFORMANCE UNDER THEIR PREMIUM FINANCING AGREEMENT AND SIMILAR PROGRAMS; AND (II) GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned cases (collectively,

the "**Debtors**") hereby move (the "**Motion**") for entry of an order, pursuant to sections 105(a),

363(b), 363(c) and 1107(a) of title 11 of the United States Code (the "**Bankruptcy Code**") and

Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy**

**Rules**"):  (i) authorizing the Debtors to (a) continue insurance policies and agreements relating

thereto, (b) honor certain prepetition obligations in respect thereof, and (c) continue performance

under their premium financing agreement and similar programs; and (ii) granting related relief.

In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of

Stephen Farber In Support of Chapter 11 Petitions and First Day Pleadings (the "**Farber**

**Declaration**"), which was filed with the Court concurrently herewith.  In further support of the

Motion, the Debtors, by and through their undersigned proposed co-counsel, respectfully

represent:

---

¹ The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are listed in <u>Schedule 1</u>.  The Debtors' headquarters are located at 9221 E. Via de Ventura, Scottsdale, AZ 85258.

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for relief requested herein are sections 105(a), 363(b), 363(c) and 1107(a) of the Bankruptcy Code, as supplemented by Bankruptcy Rules 6003 and 6004(h).

## BACKGROUND

2.      On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors intend to continue in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The Debtors have requested that these chapter 11 cases be consolidated for procedural purposes.  As of the date hereof, no trustee, examiner or official committee has been appointed in any of the Debtors' cases.

3.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Farber Declaration.

## THE DEBTORS' INSURANCE POLICIES

4.      In connection with the operation of their businesses, the Debtors maintain insurance policies (each, an "**Insurance Policy**" and, collectively, the "**Insurance Policies**") through third-party insurance carriers (the "**Insurance Carriers**").  Annexed hereto as Exhibit A

is a list of the Debtors' current Insurance Policies and corresponding Insurance Carriers.[2] As set forth below, the Insurance Policies insure against claims and losses relating to, among other things, general liability, automobile liability, fiduciary liability, and property loss.

## PREMIUM FINANCING

5.      The Debtors believe they are current on all premiums due under the Insurance Policies as of the Petition Date.  For the current policy period (which, subject to certain exceptions, runs from 5/1/2013 through 5/1/2014), approximately $4.5 million of the premiums due under the Insurance Policies were financed by First Insurance Funding Corporation ("**First Insurance**") pursuant to a premium financing agreement (the "**Premium Financing Agreement**") between certain Debtors and First Insurance.  Under the Premium Financing Agreement, the Debtors are obligated to make, in addition to a down payment, a total of ten monthly installment payments of $452,718.03 to First Insurance on the 1st of each month. Premiums under the following Insurance Policies are financed through the Premium Financing Agreement: (a) the Debtors' healthcare professional and healthcare general liability policies with Lexington Insurance Company; (b) the Debtors' general liability policies with Lexington Insurance Company; (c) the Debtors' excess automobile insurance policy with Lexington Insurance Company; (d) the Debtors' umbrella liability insurance policy with Lexington Insurance Company; (e) the Debtors' excess liability insurance policy with General Security Indemnity Company of Arizona; (f) the Debtors' property insurance policy with Affiliated FM Insurance Company; (g) the Debtors' automobile physical damage policy with AGCS Marine Insurance Company; (h) the Debtors' foreign liability insurance policy with The Insurance

---

[2]      Notwithstanding the Debtors' diligence, the Debtors currently may have certain Insurance Policies that are not reflected on Exhibit A.  The Debtors' failure to include a particular Insurance Policy on Exhibit A shall not operate to exclude that policy from the coverage of this Motion or any order of the Court entered in connection with this Motion.

Company of the State of Pennsylvania; (i) the Debtors' employed lawyers professional liability insurance policy with National Union Fire Insurance Company of Pittsburgh, Pa.; (j) the Debtors' fiduciary liability insurance policy with Federal Insurance Company; (k) the Debtors' crime insurance policy with Federal Insurance Company and (l) the Debtors' employment practices liability insurance policy with Axis Insurance Company.  Approximately $3,200,000 in payments due to First Insurance remain under the Premium Financing Agreement; accordingly, the Debtors hereby request authority to pay such amount and any other amounts that come due postpetition under the Premium Financing Agreement, irrespective of when such amounts accrued, in order to ensure the continuing coverage under the Insurance Policies.

## CARRIER DIRECT INSTALLMENT SCHEDULE

6.      For the current policy period (which, subject to certain exceptions, runs until May 1, 2014), approximately $2,025,785 of the premiums due under the Insurance Policies are subject to a carrier direct installment program with Ace American Insurance Company (the "**Direct Installment Agreement**").  In addition to a down payment, the Debtors are required to make three quarterly installment payments in the aggregate amount of $386,097 in connection with the following Insurance Policies with Ace American Insurance Company:  (a) the Debtors' automobile liability insurance policy; (b) the Debtors' workers' compensation insurance policy; (c) the Debtors' excess workers' compensation policy (relating solely to the State of Ohio); and (d) the Debtors' New York Automobile Liability Policy (as defined below).  The Debtors currently owe approximately $773,000 on account of the Direct Installment Agreement. Through this Motion, the Debtors request authority to pay such amount and any other amounts that come due postpetition under the Direct Installment Agreement, irrespective of when such amounts accrued, in order to ensure the continuing coverage under the Insurance Policies.

## CLAIMS ADMINISTRATION

7.        The Debtors have contracted with a third-party administrator to provide consultation and other claims-related services with respect to claims and lawsuits (that are within the applicable deductible and/or self-insured retention) relating to various policies (the "**Claims Administration Services**").  The Debtors contracted directly with Gallagher Bassett Services, Inc. to perform the Claims Administration Services for an annual amount of $1,088,254, which is paid in monthly installments.  Through this Motion, the Debtors request authority to pay such amount and any other amounts that come due postpetition in connection with the Claims Administration Services, irrespective of when such amounts accrued.

## INSURANCE POLICIES

A.        **Healthcare Professional and Healthcare General Liability Policies**

8.        The Debtors maintain two insurance policies with Lexington Insurance Company covering both healthcare professional liability (the "**Healthcare Professional Liability Policy**") and healthcare general liability (the "**Healthcare General Liability Policy**").[3] These policies provide coverage for claims on account of a medical incident, bodily injury, property damage, personal injury or advertising injury.  The Debtors' self-insured retention ("**SIR**") under these policies is $1,000,000 per occurrence and $8,000,000 in the aggregate.  The Debtors' annual premiums under these policies total approximately $780,311, and are financed pursuant to the Premium Financing Agreement.  These policies are scheduled to expire on May 1, 2014.

---

[3]        The Debtors also maintain a Healthcare General Liability Policy with Lexington Insurance Company that only applies to Debtors Rural/Metro of San Diego, Inc. and San Diego Medical Services Enterprises, LLC.

B.    **Workers' Compensation**

       9.     The Debtors are required under the laws of various states in which they operate to maintain workers' compensation insurance that provides their employees with coverage for injuries arising from or related to their employment with the Debtors. The Debtors (a) maintain workers' compensation liability insurance in each of the states in which they do business, and (b) provide employees with workers' compensation coverage for employment-related injury claims that arise in any jurisdiction (the "**Workers' Compensation Program**"). To implement the Workers' Compensation Program, the Debtors maintain two workers' compensation insurance policies (the "**WC Policies**") with ACE American Insurance Company, which are scheduled to expire on May 1, 2014.[4]

       10.     Under the WC Policies, insurance coverage is provided for workers' compensation claims in amounts required under applicable state law. The deductibles under the WC Policies are each $1,000,000 and they each cap employer liability at $2,000,000 per accident. The Debtors' aggregate annual premiums under the WC Policies total approximately $1,599,948. All of the premiums under the WC Policies are paid through the Direct Installment Agreement with Ace American Insurance Company.

C.    **Automobile Liability**

       11.     The Debtors maintain four automobile liability insurance policies (the "**Auto Policies**"). The Auto Policies cover claims for personal injury and property damage relating to automobiles owned and/or rented by the Debtors for business or commercial purposes.

---

[4]      One of the WC Policies relates solely to the State of Ohio. The second WC Policy covers the remaining states.

Two of the Auto Policies are financed pursuant to the Premium Financing Agreement, and two are paid through the Direct Installment Agreement with Ace American Insurance Company.

12.    The Debtors maintain two Auto Policies with ACE American Insurance Company covering claims for bodily injury, personal injury and third party property damage relating to the automobiles operated by the Debtors in twenty states (the "**Ace Auto Policies**").[5] The first of the ACE Auto Policies, which is scheduled to expire on May 1, 2014, contains a $2,000,000 deductible and annual premiums of $157,837. The second Ace Auto Policy relates to vehicles principally garaged in New York State (the "**New York Automobile Liability Policy**"). The New York Automobile Liability Policy, which expires on January 1, 2014, includes a deductible of $50,000 and an annual premium of $500. These policies are paid through the Direct Installment Agreement with Ace American Insurance Company.

13.    The Debtors also maintain an excess Auto Policy with Lexington Insurance Company, which is scheduled to expire on May 1, 2014 (the "**Excess Auto Policy**"). The Excess Auto Policy provides additional liability coverage after the aggregate coverage limit under the Ace Auto Policies are exhausted. This policy requires the Debtors to pay a $2,000,000 SIR. The Debtors' annual premiums under the Excess Auto Policy are approximately $2,090,615. This policy is financed under the Premium Financing Agreement.

14.    Finally, the Debtors maintain an Auto Policy with AGCS Marine Insurance Company covering physical damage to the Debtors' vehicles (the "**Automobile Physical Damage Policy**"). This policy includes a $100,000 deductible. The Automobile

---

[5]    The Ace Auto Policies provide coverage in the following states: Alabama; Arizona; California; Colorado; Florida; Georgia; Indiana; Kentucky; Louisiana; Mississippi; Missouri; Nebraska; New Jersey; New York; North Dakota; Ohio; Oregon; South Dakota; Tennessee; and Washington.

Physical Damage Policy is scheduled to expire on May 1, 2014.  This policy is financed under the Premium Financing Agreement.

D.    **Umbrella Liability and Excess Liability Policies**

15.    The Debtors maintain an umbrella liability insurance policy (the "**Umbrella Policy**") with Lexington Insurance Company.  The Umbrella Policy provides supplemental coverage for claims for bodily injury, property damage, personal injury and advertising injury in excess of applicable coverage limits under the Healthcare Professional Liability and Healthcare General Liability Policies.  Annual premiums for the Umbrella Policy total approximately $1,701,399, and are financed pursuant to the Premium Financing Agreement.  The Umbrella Policy is scheduled to expire on May 1, 2014.

16.    The Debtors also maintain an excess liability insurance policy (the "**Excess Liability Policy**") with General Security Indemnity Company of Arizona.  The Excess Liability Policy provides additional liability coverage in excess of the Umbrella Policy, after the coverage limits of the other Insurance Policies have been exhausted.  Annual premiums under the Excess Liability Policy total approximately $165,010, and are financed under the Premium Financing Agreement.  The Excess Liability Policy is scheduled to expire on May 1, 2014.

E.    **Property**

17.    The Debtors maintain a property insurance policy (the "**Property Policy**") with Affiliated FM Insurance Company.  The Property Policy, which expires on May 1, 2014, provides coverage for direct physical loss or damage to the Debtors' real and personal property, including, among other things, general property damage, earthquake damage, flood damage and business interruption damage.  Deductibles under the Property Policy vary depending on the type and location of the loss, and range from $10,000 to $500,000.  Annual premiums payable under

the Property Policy are approximately $149,305, and are financed under the Premium Financing

Agreement.

F.      **Directors and Officers Liability**

        18.      The Debtors maintain a primary directors and officers liability insurance

policy (the "**Basic D&O Policy**") with U.S. Specialty Insurance Company. The policy covers

losses on account of, among other things: (a) claims asserted against the Debtors' directors and

officers for wrongful acts; (b) the Debtors' indemnification obligations with respect to claims

made against directors and officers; and (c) claims asserted against the Debtors for wrongful

acts. Premiums for the Basic D&O Policy total approximately $875,000 annually (this amount

includes both the annual policy premium as well as a prepaid six year extended reporting period,

which is triggered upon the Debtors' successful emergence from a bankruptcy proceeding). This

policy includes an SIR ranging from $0 to $250,000, depending on the type of loss incurred

under the policy. The Basic D&O Policy is scheduled to expire on June 30, 2014.

G.      **Excess Directors and Officers Liability**

        19.      The Debtors also maintain excess directors and officers liability insurance

policies (the "**Excess D&O Policies**") with Arch Insurance Company, XL Specialty Insurance

Company, Ironshore Insurance Services LLC, Berkley Professional Liability, National Union

Insurance Company of Pittsburgh, Pa. and RLI Insurance Company. The Excess D&O Policies

cover losses on account of, among other things: (a) claims asserted against the Debtors' directors

and officers for wrongful acts; (b) the Debtors' indemnification obligations with respect to

claims made against directors and officers; and (c) claims asserted against the Debtors for

wrongful acts. The Excess D&O Policies provide coverage to the extent that covered claims

under the Basic D&O Policy exceed the coverage limit under such policy. Premiums for the

Excess D&O Policies total approximately $5,868,000 annually. The Excess D&O Policies are

scheduled to expire on June 30, 2014.

H.      **Fiduciary Liability and Employment Practices Liability**

20.      The Debtors maintain a fiduciary liability insurance policy (the

"**Fiduciary Policy**") with Federal Insurance Company, which expires on May 1, 2014.  The

Fiduciary Policy provides coverage against losses arising from, among other things:  (a) any

actual or alleged breaches of responsibilities, obligations or duties imposed upon fiduciaries of

the Debtors' employee benefit programs; and (b) any actual or alleged act, error or omission in

the administration of any of the Debtors' employee benefit programs.  The Debtors' annual

premiums under the Fiduciary Policy total approximately $21,218 and are financed under the

Premium Financing Agreement.  This policy includes a SIR of $25,000.[6]

21.      The Debtors also maintain an employment practices liability insurance

policy (the "**EPL Policy**") with Axis Insurance Company, which will expire on May 1, 2014.

The EPL Policy provides coverage against losses arising from employment-related claims (e.g.,

discrimination, wrongful discharge, and sexual harassment claims) that may be asserted by the

Debtors' current employees, former employees, customers or vendors.  This policy includes a

SIR of $500,000 per claim as well as a SIR of $1,000,000 for class action claims.  Premiums

under the EPL Policy total approximately $145,779 annually, and are financed pursuant to the

Premium Financing Agreement.

I.      **Pollution Insurance**

22.      The Debtors maintain a pollution liability insurance policy with Chubb

Custom Insurance Company, which expires on December 31, 2014 (the "**Pollution Policy**").

The Pollution Policy provides coverage for losses resulting from bodily injury, property damage

---

[6]      The Fiduciary Policy also includes a SIR of $75,000 for claims involving securities issued by the Debtors.

or environmental damage caused by a pollution incident. The Deductible under this policy is $50,000. The annual premiums under the Pollution Policy total approximately $18,065. Premiums under the Pollution Policy are billed and collected through the Debtors' insurance broker.

J.    **Foreign Liability Insurance**

23.    The Debtors also maintain foreign liability insurance with The Insurance Company of the State of Pennsylvania, which expires on May 1, 2014 (the "**Foreign Policy**"). This policy covers, among other things, workers' compensation, kidnapping and ransom for employees that may travel to foreign countries. The Debtors' annual premiums under the Foreign Policy are approximately $4,018 and are financed under the Premium Financing Agreement. The coverage limits under the Foreign Policy vary depending on the type of loss.

K.    **Crime Insurance**

24.    The Debtors maintain a blanket crime insurance policy with Federal Insurance Company, which expires on May 1, 2014 (the "**Crime Policy**"). The Crime Policy provides coverage for, among other things, employee theft, forgery, computer fraud, funds transfer fraud, money orders and counterfeit fraud, and credit card fraud. The SIR under the Crime Policy is $50,000. The Debtors' annual premiums under this policy total approximately $42,165 and are financed under the Premium Financing Agreement.

L.    **Employed Lawyers Professional Insurance**

25.    The Debtors also maintain an employed lawyers professional liability insurance policy with National Union Fire Insurance Company of Pittsburgh, Pa., which expires on May 1, 2014. This policy covers claims for certain wrongful acts brought against the Debtors' corporate counsel (and the Debtors' employees who provide support to corporate counsel in the performance of legal services) persons employed by corporate counsel). This

01:13977043.1

- 11 -

policy contains a SIR of $15,000. The Debtors' annual premiums under the policy total $15,854 and are financed under the Premium Financing Agreement.

## **RELIEF REQUESTED**

26.     By this Motion, the Debtors seek authority, but not direction, pursuant to sections 105(a), 363(b), 363(c) and 1107(a) of the Bankruptcy Code and Bankruptcy Rule 6003, to:  (i) maintain and continue to make all payments with respect to Insurance Policies on an uninterrupted basis, in accordance with the Debtors' prepetition practices; (ii) pay any prepetition premiums, deductibles, SIRs, or other amounts that may be (or may become) due and owing under the Insurance Policies; and (iii) continue performance under the Premium Financing Agreement, Direct Installment Agreement, and the Debtors' agreement with respect to the Claims Administration Services.

27.     The Debtors also request that the Court: (a) authorize and direct any and all banks with which the Debtors maintain accounts that the Debtors use to make payments related to the Insurance Policies to receive, process, honor and pay all checks drawn on such accounts and fund transfers for payments with respect to the Insurance Policies, whether presented before or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments; and (b) authorize the Debtors to issue new postpetition checks or effect new postpetition fund transfers on account of the Insurance Policies to replace any prepetition checks or fund transfer requests that may be dishonored or rejected. Such relief is integral in order to implement the relief sought by this Motion.

## **BASIS FOR RELIEF**

28.     Section 363(b)(1) of the Bankruptcy Code provides: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business,

property of the estate . . . ." 11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code

provides:

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title.
> No provision of this title providing for the raising of an issue by a
> party in interest shall be construed to preclude the court from, sua
> sponte, taking any action or making any determination necessary
> or appropriate to enforce or implement court orders or rules, or to
> prevent an abuse of process.

11 U.S.C. § 105(a).  Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad

authority and discretion to enforce the provisions of the Bankruptcy Code either under specific

statutory fiat or under equitable common law principles.

29.    A bankruptcy court may use its equitable powers to authorize the payment

of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor.  See

In re Just for Feet, Inc., 242 B.R. 821, 824 (D. Del. 1999) (acknowledging that "[c]ertain pre-

petition claims . . . may need to be paid to facilitate a successful reorganization" and that

"[s]ection 105(a) of the [Bankruptcy] Code provides a statutory basis for the payment of pre-

petition claims"); see also In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989)

("The ability of a Bankruptcy Court to authorize the payment of pre-petition debt when such

payment is needed to facilitate the rehabilitation of the debtor is not a novel concept.").  This

equitable common law principle "was first articulated by the United States Supreme Court in

Miltenberger v. Logansport, C. & S.W Ry. Co., 106 U.S. 286 (1882) and is commonly referred

to as either the 'doctrine of necessity' or the 'necessity of payment' rule." In re Ionosphere

Clubs, Inc., 98 B.R. at 175-76.

30.    In a long line of well-established cases, federal courts consistently have

permitted postpetition payment of prepetition obligations where necessary to preserve or enhance

the value of a debtor's estate for the benefit of all creditors.  See, e.g., In re Just for Feet, Inc.,

01:13977043.1

- 13 -

242 B.R. at 826 (granting approval to pay prepetition claims of certain trade vendors that were "critical to the Debtors' reorganization"); In re Columbia Gas Sys., Inc., 171 B.R. 189, 192 (Bankr. D. Del. 1994) (noting that debtors may pay prepetition claims that are essential to continued operation of business); In re Chateaugay Corp., 80 B.R. 279, 285–86 (S.D.N.Y. 1987) (approving lower court's order authorizing payment of prepetition wages, salaries, expenses and benefits); Miltenberger, 106 U.S. at 312 (payment of pre-receivership claim prior to reorganization permitted to prevent stoppage of crucial "business relations").

31.    The Debtors submit that it is essential that they be permitted to maintain the Insurance Policies and continue making payments thereunder, including the payment of any amounts in respect of premiums, deductibles or self-insured retention obligations that accrued prior to the Petition Date. The Debtors are current on all premium payments as of the Petition Date and no amounts are currently owing with respect to the Insurance Policies. Nevertheless, out of an abundance of caution, and because of the importance of the protection afforded by the Insurance Policies, the Debtors seek authority, but not direction, to make all future payments required in respect of the Insurance Policies notwithstanding the fact that such payments could be based, in whole or in part, on prepetition liabilities with respect to the Insurance Policies, including, without limitation and by way of example, SIRs and deductibles relating to claims under the Insurance Policies that arose prior to the Petition Date. If the Insurance Policies were allowed to lapse, or if the Debtors were unable to trigger coverage under the Insurance Policies due to non-payment of SIRs or deductibles, the Debtors would be exposed to substantial liability for any damages or loss resulting to persons and/or property of the Debtors and others. Moreover, certain of the Insurance Carriers may have the right to draw on letters of credit if the Debtors fail to honor their obligations under their Insurance Policies. It is essential to the

continued operation of the Debtors' businesses and the maximization of the value of these estates that all amounts owing under the Insurance Policies be paid on a timely basis.

32.     Other considerations support authorizing the Debtors to maintain and continue their insurance programs.  First, the Operating Guidelines and Reporting Requirements of the United States Trustee for Chapter 11 Debtors in Possession and Chapter 11 Trustees require chapter 11 debtors to maintain insurance coverage customary and appropriate for its industry.  Second, maintenance of the Insurance Policies is necessary to provide adequate protection of the Debtors' prepetition secured lenders' collateral.

33.     To the extent this Motion is granted, the Debtors intend to pay all obligations arising under or related to the Insurance Policies, including premiums, SIRs, and deductibles, subsequent to the Petition Date in the ordinary course of business, in accordance with the terms of the Insurance Policies, the Premium Financing Agreement and all related arrangements or agreements.

34.     In addition, the Debtors' continued payment of installments under the Premium Financing Agreement is warranted.  Security interests created by premium finance arrangements generally are recognized as secured claims in bankruptcy to the extent of the amount of unearned premiums financed pursuant to such agreements.  See In re St. James Inc., 402 B.R. 209, 213 (Bankr. E.D. Mich. 2009); TIFCO, Inc. v. U.S. Repeating Arms Co. (In re U.S. Repeating Arms Co.), 67 B.R. 990, 994-95 (Bankr. D. Conn. 1986); Drabkin v. A.I. Credit Corp. (In re Auto-Train Corp.), 9 B.R. 159, 164-66 (Bankr. D.D.C. 1981).  Accordingly, First Insurance would be entitled to seek relief from the automatic stay, either to cancel the Debtors' insurance policies in accordance with the terms of the Premium Financing Agreement, or to seek adequate protection of its investment under section 361 of the Bankruptcy Code.  See Universal

Motor Express, 72 B.R. 208, 211 (Bankr. W.D.N.C. 1987) (recognizing that a default under the financing arrangement and the resulting decline in value of the unearned premiums justified relief from the automatic stay). Moreover, First Insurance may be entitled to adequate protection under Bankruptcy Code section 363(e) in connection with its security interests in certain sums payable to the Debtors under the Premium Financing Agreement.

35.    In the event that the installment payments under the Premium Financing Agreement are not made, First Insurance may have cause under section 362(d) Bankruptcy Code to obtain relief from the automatic stay and terminate the underlying policies. Even if the Debtors were successful in preventing First Insurance from lifting the automatic stay, such litigation would be contested and costly to the Debtors' estates. More importantly, if unsuccessful in the automatic stay litigation, the Debtors may be unable to find a carrier willing to provide similar insurance coverage or a company willing to finance the premiums without charging significantly higher premiums and fees. Therefore, it is essential to the Debtors' restructuring efforts that all amounts owing under the Premium Financing Agreement be paid on a timely basis.

36.    To the extent that any Insurance Policy or other agreement described herein is deemed an executory contract within the meaning of section 365 of the Bankruptcy Code, the Debtors are not at this time seeking to assume such agreements. The Debtors submit that court authorization of payments to be made with respect to the Insurance Policies should not be deemed to constitute postpetition assumption or adoption, pursuant to section 365 of the Bankruptcy Code, of any such Insurance Policy. The Debtors will continue to review the Insurance Policies during the course of these cases, and hereby reserve all of their rights with respect thereto.

01:13977043.1

37.     Numerous courts in this jurisdiction have granted relief similar to that requested herein in other chapter 11 cases.  See, e.g., In re WP Steel Venture LLC, Case No. 12-11661 (KJC) (Bankr. D. Del. June 1, 2012); In re Ambassadors International, Inc., Case No. 11-11002 (KG) (Bankr. D. Del. Apr. 5, 2011); In re Ultimate Acquisition Partners, LP, Case No. 11-10245 (MFW) (Bankr. D. Del. Jan. 28, 2011); In re Appleseed's Intermediate Holdings LLC, Case No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011);  In re Magic Brands, LLC, Case No. 10-11310 (BLS) (Bankr. D. Del. Apr. 23, 2010); In re SP Wind Down, Inc., Case No. 10-10352 (KG) (Bankr. D. Del. Feb. 4, 2010); In re International Aluminum Corp., Case No. 10-10003 (MFW) (Bankr. D. Del. Jan. 28, 2010); In re TLG Liquidation Corp., Case No. 10-10206 (MFW) (Bankr. D. Del. Jan. 26, 2010).

38.     The Debtors further submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, the requirements of Bankruptcy Rule 6003 have been satisfied.

39.     To successfully implement the foregoing, the Debtors respectfully seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay under Bankruptcy Rule 6004(h).

## NOTICE

40.     Notice of this Motion will be given to: (a) the U.S. Trustee; (b) Credit Suisse, AG, as the administrative agent under the Debtors' prepetition secured credit agreement and its counsel; (c) counsel to Wells Fargo, indenture trustee for the Debtors' senior unsecured notes and its counsel; (d) counsel to certain of the Debtors' senior unsecured noteholders; (e) the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (f) the Insurance Carriers; (g) the parties to the Premium Financing Agreement and the Direct Installment Agreement; (h)

Gallagher Bassett Services, Inc.; and (i) the Debtors' existing banks.  The Debtors submit that,

under the circumstances, no other or further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order,

substantially in the form annexed hereto as Exhibit B, granting the relief requested in the Motion

and such other and further relief as may be just or proper.

Dated:  August 4, 2013
        Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Edmon L. Morton (No. 3856)
Maris J. Kandestin (No. 5294)
Rodney Square
1000 North King Street
Wilmington, DE  19801
(302) 571-6600
(302) 571-1253 (Fax)
emorton@ycst.com
mkandestin@ycst.com

-and-

WILLKIE FARR & GALLAGHER LLP
Matthew A. Feldman
Rachel C. Strickland
Daniel I. Forman
787 Seventh Avenue
New York, New York 10019
(212) 728-8000
(212) 728-8111 (Fax)
mfeldman@willkie.com
rstrickland@willkie.com
dforman@willkie.com

*Proposed Co-Counsel to the Debtors and
Debtors in Possession*

01:13977043.1

### Schedule 1

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:

| | |
|---|---|
| Arizona EMS Holdings, Inc. (AZ) (7244) | Rural/Metro of Brewerton, Inc. (NY) (0912) |
| Beacon Transportation, Inc. (NY) (4028) | Rural/Metro of California, Inc. (DE) (8164) |
| Bowers Companies, Inc. (CA) (6465) | Rural/Metro of Central Alabama, Inc. (DE) (5348) |
| ComTrans Ambulance Service, Inc. (AZ) (6923) | Rural/Metro of Central Colorado, Inc. (DE) (6583) |
| Corning Ambulance Service, Inc. (NY) (5659) | Rural/Metro of Central Ohio, Inc. (DE) (2407) |
| Donlock, Ltd. (PA) (0659) | Rural/Metro of Greater Seattle, Inc. (WA) (6902) |
| E.M.S. Ventures, Inc. (GA) (3254) | Rural/Metro of Indiana, L.P. (DE) (9954) |
| Eastern Ambulance Service, Inc. (NE) (7359) | Rural/Metro of New York, Inc. (DE) (0083) |
| Eastern Paramedics, Inc. (DE) (1102) | Rural/Metro of Northern California, Inc. (DE) (3227) |
| Emergency Medical Transport, Inc. (AZ) (3878) | Rural/Metro of Northern Ohio, Inc. (DE) (8398) |
| EMS Ventures of South Carolina, Inc. (SC) (4174) | Rural/Metro of Ohio, Inc (DE) (0488) |
| Gold Cross Ambulance Service of PA, Inc. (OH) (9869) | Rural/Metro of Oregon, Inc. (DE) (3435) |
| Gold Cross Ambulance Services, Inc. (DE) (4792) | Rural/Metro of Rochester, Inc. (NY) (0148) |
| Lasalle Ambulance, Inc. (NY) (4422) | Rural/Metro of San Diego, Inc. (CA) (4132) |
| Medical Emergency Devices and Services (Meds), Inc. (AZ) (2218) | Rural/Metro of Southern California, Inc. (DE) (1679) |
| Mercury Ambulance Service, Inc. (KY) (8659) | Rural/Metro of Southern Ohio, Inc. (OH) (9303) |
| Metro Care Corp. (OH) (3994) | Rural/Metro of Tennessee, L.P. (DE) (3714) |
| National Ambulance & Oxygen Service, Inc. (NY) (9150) | Rural/Metro Operating Company, LLC (DE) (7563) |
| North Miss. Ambulance Service, Inc. (MS) (4696) | San Diego Medical Services Enterprise, L.L.C. (CA) (4136) |
| Pacific Ambulance, Inc. (CA) (7781) | Sioux Falls Ambulance, Inc. (SD) (4797) |
| Professional Medical Transport, Inc. (AZ) (6661) | Southwest Ambulance and Rescue of Arizona, Inc. (AZ) (9229) |
| R/M Arizona Holdings, Inc. (AZ) (6302) | Southwest Ambulance of Casa Grande, Inc. (AZ) (2807) |
| R/M Management Co., Inc. (AZ) (3444) | Southwest Ambulance of New Mexico, Inc. (NM) (5701) |
| R/M of Tennessee G.P., Inc. (DE) (0819) | Southwest Ambulance of Southeastern Arizona, Inc. (AZ) (8415) |
| R/M of Tennessee L.P., Inc. (DE) (0821) | Southwest Ambulance of Tucson, Inc. (AZ) (3618) |
| RMC Corporate Center, L.L.C. (AZ) (4546) | Southwest General Services, Inc. (AZ) (7537) |
| Rural/Metro (Delaware) Inc. (DE) (1572) | SW General Inc. (AZ) (4455) |
| Rural/Metro Corporation (AZ) (4388) | The Aid Ambulance Company, Inc. (DE) (4432) |
| Rural/Metro Corporation (DE) (6929) | The Aid Company, Inc. (IN) (8091) |
| Rural/Metro Corporation of Florida (FL) (4668) | Towns Ambulance Service, Inc. (NY) (8281) |
| Rural/Metro Corporation of Tennessee (TN) (9245) | Valley Fire Service, Inc. (DE) (6188) |
| Rural/Metro Fire Dept., Inc. (AZ) (3445) | W & W Leasing Company, Inc. (AZ) (1806) |
| Rural/Metro Mid-South, L.P. (DE) (4413) | WP Rocket Holdings, Inc. (DE) (9609) |

## EXHIBIT A

### Insurance Policies

| Type | Insurer | Expiration | Policy Number(s) | Total Approximate Annual Premium[1] |
|------|---------|------------|------------------|-------------------------------------|
| Healthcare Professional / General Liability | Lexington Insurance Company | 5/1/14 | 6797001 | $749,997.74 |
| Healthcare General Liability | Lexington Insurance Company | 5/1/14 | 7157693 | $30,313.97 |
| Automobile Liability | ACE American Insurance Company | 5/1/14 | ISA H08718593 | $157,837.00 |
| Automobile Liability | ACE American Insurance Company | 1/1/14 | ISA H08696573 | $500.00 |
| Excess Automobile Liability | Lexington Insurance Company | 5/1/14 | 021391532 | $2,090,615.80 |
| Umbrella / Excess Liability | Lexington Insurance Company | 5/1/14 | 6797002 | $1,701,399.12 |
| Excess Liability | General Security Indemnity Company of Arizona | 5/1/14 | 201310F1541401 | $165,010.00 |
| Contractors Pollution Liability | Chubb Custom Insurance Company | 12/31/14 | 37313484 | $18,065.66 |
| Workers Compensation (All States Other Than Ohio) | ACE American Insurance Company | 5/1/14 | WLRC47317125 | $1,580,060.00 |
| Workers Compensation (Ohio) | ACE American Insurance Company | 5/1/14 | WCUC47317113 | $19,888.00 |
| Property | Affiliated FM Insurance Company | 5/1/14 | SZ589 | $149,305.00 |

---

[1]     Includes applicable taxes and fees.

| Type | Insurer | Expiration | Policy Number(s) | Total Approximate Annual Premium[1] |
|------|---------|-----------|------------------|--------------------------------------|
| Automobile Physical Damage | AGCS Marine Insurance Company | 5/1/14 | MXI93042851 | $95,846.36 |
| Foreign | The Insurance Company of the State of Pennsylvania | 5/1/14 | WR10003432 | $4,018.00 |
| Employed Lawyers Professional Liability | National Union Fire Insurance Company of Pittsburgh, Pa. | 5/1/14 | 019956392 | $15,854.00 |
| Fiduciary Liability | Federal Insurance Company | 5/1/14 | 68044961 | $21,218.00 |
| Crime | Federal Insurance Company | 5/1/14 | 82237885 | $42,165.00 |
| Employment Practices Liability | Axis Insurance Company | 5/1/14 | MLN760092012013 | $145,779.00 |
| Directors & Officers Liability | U.S. Specialty Insurance Company | 6/30/14 | 14MGU13A29746 | $875,000.00 |
| Excess Directors & Officers Liability | Arch Insurance Company | 6/30/14 | DOX004520602 | $400,000.00 |
| Excess Directors & Officers Liability | Arch Insurance Company | 6/30/14 | ABX00002000904 | $360,000.00 |
| Excess Directors & Officers Liability | XL Specialty Insurance Company | 6/30/14 | ELU130549-13 | $320,000.00 |
| Excess Directors & Officers Liability | Ironshore Insurance Services LLC | 6/30/14 | 001722800 | $2,750,000.00 |
| Excess Directors & Officers Liability | Berkley Professional Liability | 6/30/14 | 18008853 | $600,000.00 |

| Type | Insurer | Expiration | Policy Number(s) | Total Approximate Annual Premium[1] |
|------|---------|------------|------------------|-------------------------------------|
| Excess Directors & Officers Liability | XL Specialty Insurance Company | 6/30/14 | ELU13055313 | $600,000.00 |
| Excess Directors & Officers Liability | National Union Fire Insurance Company of Pittsburgh, Pa. | 6/30/14 | 011377370 | $600,000.00 |
| Excess Directors & Officers Liability | RLI Insurance Company | 6/30/14 | EPG0010859 | $150,000.00 |

## **EXHIBIT B**

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
In re                                          :    Chapter 11
                                               :
Rural/Metro Corporation, et al.,[1]            :    Case No. 13-11952 (    )
                                               :
                        Debtors.               :    (Jointly Administered)
-------------------------------------------------------x
```

**ORDER, PURSUANT TO SECTIONS 105(a), 363(b), 363(c)
AND 1107(a) OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES
6003 AND 6004(h): (I) AUTHORIZING DEBTORS TO (A) CONTINUE
INSURANCE POLICIES AND AGREEMENTS RELATING THERETO, (B)
HONOR CERTAIN PREPETITION OBLIGATIONS IN RESPECT THEREOF,
AND (C) CONTINUE PERFORMANCE UNDER THEIR PREMIUM FINANCING
AGREEMENT AND SIMILAR PROGRAMS; AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "**Motion**") of the debtors and debtors in possession in the

above-captioned cases (collectively, the "**Debtors**") for entry of an order, pursuant to sections

105(a), 363(b), 363(c) and 1107(a) of title 11 of the United States Code (the "**Bankruptcy**

**Code**") and Rules 6003 and 6004(h) of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"): (i) authorizing the Debtors to (a) continue insurance policies (the

"**Insurance Policies**") and agreements relating thereto, (b) honor certain prepetition obligations

in respect thereof, and (c) continue performance under their premium financing agreement and

similar programs; and (ii) granting related relief; and upon the Declaration of Stephen Farber In

Support of Chapter 11 Petitions and First Day Pleadings; and it appearing that jurisdiction is

proper pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference

from the United States District Court for the District of Delaware dated as of February 29, 2012;

---

[1]     A list of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer
identification number is attached as <u>Schedule 1</u> to the Declaration of Stephen Farber in Support of Chapter
11 Petition and First Day Pleadings [Docket No. 2] and at www.donlinrecano.com/rmc.  The Debtors'
headquarters are located at 9221 E. Via de Ventura, Scottsdale, AZ 85258.

and due and sufficient notice of the Motion having been given; and it appearing that no other or further notice is required; and after due deliberation and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED that:**

1.      The Motion is granted, as set forth herein.

2.      Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

3.      The Debtors are authorized, but not directed, to maintain and continue to make all payments with respect to the Insurance Policies, the Premium Financing Agreement, Direct Installment Agreement, and the Claims Administration Services, and any related agreements or arrangements, irrespective of when such amounts accrued, including paying any premiums, SIRs, and deductibles without interruption in the ordinary course of business, in accordance with the Debtors' practices and procedures as in effect prior to the Petition Date.

4.      The Debtors are authorized, but not directed, to enter into new insurance policies or premium financing programs in the ordinary course of business through the renewal of the Insurance Policies or Premium Financing Agreement or the purchase of new insurance policies or the entry into new premium financing arrangements to the extent that the Debtors determine that such action is necessary or appropriate in their business judgment.

5.      This order shall not create any obligation on the part of the Debtors or their officers, directors, attorneys or agents to pay any of the obligations discussed herein or in the Motion, and none of the foregoing persons shall have any liability on account of any decision by the Debtors not to pay such obligations, and nothing in this order shall be deemed to increase,

01:13977043.1

reclassify, elevate to an administrative expense status or otherwise affect such obligations to the extent they are not paid.

      6.     All applicable banks and other financial institutions are hereby authorized to receive, process, honor, and pay any and all checks and transfer requests evidencing amounts paid by the Debtors under this Order whether presented prior to or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Order.

      7.     To the extent that the Insurance Policies, the Premium Financing Agreement or any related contracts or agreements are deemed executory contracts under section 365 of the Bankruptcy Code, neither the relief granted hereby nor any actions or payments made by the Debtors pursuant to this order shall be deemed an assumption or rejection of any such contract pursuant to section 365 of the Bankruptcy Code, or that any such contract is an executory contract under section 365 of the Bankruptcy Code.

      8.     Nothing in this Order or the Motion is intended or shall be construed to constitute relief from the automatic stay pursuant to section 362 of the Bankruptcy Code.

      9.     Notwithstanding anything to the contrary contained herein, (a) any payment made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any order regarding debtor-in-possession financing or the use of cash collateral, and (b) any claim for which payment is authorized pursuant to this Order that is treated as an administrative expense of the Debtors' estates shall be and is subject and subordinate to any and all claims, liens, security interests and priorities granted to the Debtors' secured prepetition and postpetition lenders (and their respective agents) pursuant to any other

-3-

order of the Court (including any order regarding debtor-in-possession financing or the use of cash collateral), and no payment shall be made on any such claim except as permitted under any order regarding debtor-in-possession financing or the use of cash collateral.

10.    The relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors, and timely entry of this Order is not prohibited by Bankruptcy Rule 6003(b).

11.    Notwithstanding Bankruptcy Rule 6004(h), this Order shall be effective and enforceable immediately upon entry hereof.

12.    The Court shall retain jurisdiction over any matters arising from or related to the implementation or interpretation of this Order.

Dated:  Wilmington, Delaware
        _____ _____, 2013

_____
UNITED STATES BANKRUPTCY JUDGE

01:13977043.1