IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------x
In re                                                : Chapter 11
                                                     :
Rural/Metro Corporation, et al.,[1]                  : Case No. 13-11952 (    )
                                                     :
                    Debtors.                         : (Joint Administration Pending)
--------------------------------------------------------x

## DEBTORS' MOTION FOR ORDER AUTHORIZING: (A) CONTINUED USE OF THE DEBTORS' CASH MANAGEMENT SYSTEM AND PROCEDURES; (B) MAINTENANCE AND CONTINUED USE OF EXISTING BANK ACCOUNTS; (C) WAIVER OF CERTAIN OPERATING GUIDELINES RELATING TO BANK ACCOUNTS; AND (D) CONTINUATION OF INTERCOMPANY TRANSACTIONS AND ACCORDANCE OF ADMINISTRATIVE EXPENSE STATUS TO INTERCOMPANY CLAIMS

The debtors and debtors in possession in the above-captioned cases (collectively,

the "**Debtors**"), by and through their undersigned proposed co-counsel, hereby move for entry of

an order, pursuant to sections 105(a), 345, 363, 364 and 503 of title 11 of the United States Code

(the "**Bankruptcy Code**") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local

Rules**") authorizing: (a) the continued use of the Debtors' cash management system and

procedures (the "**Cash Management System**"); (b) the maintenance and continued use of their

existing bank accounts (the "**Bank Accounts**") located at the banks (the "**Banks**") listed on

Exhibit A annexed hereto; (c) a waiver of certain operating guidelines relating to bank accounts

set forth in the U.S. Department of Justice, Office of the U.S. Trustee, District of Delaware (the

"**U.S. Trustee**"), Operating Guidelines for Chapter 11 Cases (the "**U.S. Trustee Guidelines**");

---

[1]     The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are listed in Schedule 1. The Debtors' headquarters are located at 9221 E. Via de Ventura, Scottsdale, AZ 85258.

and (d) the continuation of intercompany transactions and accordance of administrative expense status to claims for such transactions (the "**Motion**").  In support of the Motion, the Debtors rely upon and incorporate by reference the Declaration of Stephen Farber in Support of Chapter 11 Petitions and First Day Pleadings (the "**Farber Declaration**"), which was filed with the Court concurrently herewith.  In further support of the Motion, the Debtors, by and through their proposed undersigned co-counsel, respectfully represent as follows:

**BACKGROUND**

1.      On the date hereof (the "**Petition Date**"), Rural/Metro Corporation ("**Rural/Metro**") and each of the other Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors intend to continue in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The Debtors have requested that these chapter 11 cases be consolidated for procedural purposes.  As of the date hereof, no trustee, examiner or official committee has been appointed in any of the Debtors' cases.

2.      The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Farber Declaration.

**JURISDICTION**

3.      This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are sections 105(a),

345, 363, 364 and 503 of the Bankruptcy Code, as supplemented by Bankruptcy Rule 6003 and Local Rule 2015-2.

## RELIEF REQUESTED

4.      By this Motion, the Debtors seek entry of an order, pursuant to sections 105(a), 345, 363, 364 and 503 of the Bankruptcy Code, Bankruptcy Rule 6003 and Local Rule 2015-2, authorizing:  (a) the continued use of the Debtors' Cash Management System; (b) maintenance and continued use of their existing Bank Accounts; (c) a waiver of certain operating guidelines relating to bank accounts set forth in the U.S. Trustee Guidelines; and (d) the continuation of intercompany transactions and accordance of administrative expense status to claims for such transactions (the "**Intercompany Claims**").

5.      The relief requested herein will help ensure the Debtors' orderly entry into chapter 11 and avoid many of the possible disruptions and distractions that could divert the Debtors' attention from more pressing matters during the initial days of these cases.

## THE DEBTORS' EXISTING BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM

6.      In the ordinary course of business prior to the Petition Date, the Debtors used the Cash Management System, which is similar to those utilized by other comparably-sized companies, to efficiently collect, concentrate and disburse the funds generated by the Debtors' business operations.  The Cash Management System enables the Debtors to monitor the collection and disbursement of funds and control the administration of their Bank Accounts.  Although many aspects of the Cash Management System are automated, the Debtors' employees monitor the system and manage the proper collection and disbursement of funds.

7.      The Cash Management System has two main components: (a) cash collection and concentration; and (b) cash disbursement.  A schematic illustrating the general

flow of funds through the Cash Management System is attached as Exhibit B hereto. The two main components of the Cash Management System are described below.

A.      Cash Collection and Concentration

8.      The Debtors generate and receive funds from their customers and other payors in an approximate aggregate amount of $60 million per month. The Debtors' receipts are collected into twenty-six separate lockboxes (collectively, the "**Collection Accounts**") at three different banking institutions.[2] The Debtors maintain seven lockboxes with Bank of Arizona, nine lockboxes with JP Morgan Chase, N.A. ("**Chase**"), and ten lockboxes with Wells Fargo Bank, N.A. ("**Wells Fargo**").[3] Payments into the Collection Accounts are in the form of cash, electronic funds transfers, checks, credit card payments, debit card payments, automatic clearing house ("**ACH**") transfers or wire transfers.

9.      With the exception of the Collection Account associated with the Debtors' operations in Santa Clara, California (the "**Santa Clara Collection Account**"), receipts deposited into the Collection Accounts are deposited regularly, on a daily basis into one of three operating accounts maintained at Bank of Arizona, Chase and Wells Fargo. Receipts deposited into the Wells Fargo and Bank of Arizona operating accounts are then transferred every

---

[2]     The Debtors also maintain a regional deposit account with Bank One (Indiana). In addition, the borrowings under the Debtors' prepetition credit facility as well as capital contributions advanced to help finance the Debtors' operations were typically deposited in the Operating Account (as defined herein) and one of the Chase deposit accounts, respectively.

[3]     The Debtors also maintain an additional Collection Account with U.S. Bank in connection with a historic billing procedure that is no longer in place. The Debtors are currently in the process of closing this account, in addition to six other accounts with Wells Fargo and Pacific Western Bank.

Thursday into an operating account at Chase (the "**Operating Account**").[4] The Operating

Account serves as the Debtors' primary concentration account.

B.      Cash Disbursements

          10.     The Debtors disburse funds through disbursement accounts maintained at

Chase and Wells Fargo (collectively, the "**Disbursement Accounts**").  Generally, the

Disbursement Accounts are funded by the Operating Account in the amount of upcoming

disbursements.  In particular, checks and ACH or wire transfers are paid on account of the

Debtors' payment obligations from the Disbursement Accounts directly, including but not

limited to payroll, healthcare and other employee benefits, taxes, refunds, general corporate

expenses as well as certain accounts payable.

          11.     The Debtors pay their payroll and other compensation by transferring

funds from the Operating Account to three separate payroll accounts at Chase and Wells Fargo

(collectively, the "**Payroll Accounts**") maintained by Rural/Metro.  The Debtors' administer

direct deposits[5] into employees' bank accounts by transferring funds from the Operating Account

to the Payroll Accounts maintained at Chase every other Wednesday to fund distributions made

on Friday of the same week.[6]  The Debtors also maintain a manual payroll account (the "**Manual**

**Payroll Account**") at Wells Fargo, which is funded from the operating account maintained at

Wells Fargo, for the relatively few instances when manual payroll checks are issued.  Through

---

[4]      The Debtors maintain an intermediate account at Chase relating to the Debtors' Santa Clara operations pursuant to the Debtors' contract with the County of Santa Clara.  Receipts received in the Santa Clara Collection Account must be held in this account for approximately twenty-four hours, after which time the receipts are then deposited into the Operating Account.

[5]      The Debtors engage Automatic Data Processing, Inc. as their payroll service provider to administer the Debtors' payroll.

[6]      Similarly, the Debtors maintain a separate account with Chase from which payroll-related taxes are debited.  This account is a zero-balance account and is funded from the Operating Account.

the Manual Payroll Account, physical checks are issued and automatically funded from the Operating Account as they clear.

12.    The remaining Disbursement Accounts are funded to pay taxes to the relevant taxing authorities; and refunds due to Medicare/Medicaid, insurance companies and individual patients holding private insurance.

C.    Other Accounts

13.    The Debtors maintain fifteen petty cash accounts at Chase, Wells Fargo, Bank of Arizona, First Tennessee Bank and M&T Bank (the "**Petty Cash Accounts**"). These accounts, which are funded from a Disbursement Account at Chase, are used to fund various miscellaneous items. Each Petty Cash Account maintains a balance ranging from approximately $200.00 to $5,000.00.

14.    The Debtors maintain a separate disbursement account at Chase (the "**Kaiser Disbursement Account**") related to customer contracts between certain of the Debtors and Kaiser Foundation Health Plan, Inc. (the "**Kaiser Contracts**"). When the Debtors subcontract certain of their obligations under the Kaiser Contracts, as may be permitted thereunder from time to time, payments to subcontractors are made from the Kaiser Disbursement Account.

15.    The Bank of Arizona Cash Collateral Account maintains a balance of $50,000 (plus interest, which continues to accrue) in accordance with the terms of certain of the Debtors' contracts with the Apache Junction Fire District, the Town of Gilbert, the Town of Queen Creek, and City of Mesa, Arizona which require a performance security fund.

16.    The M&T Bank Cash Collateral Account maintains a balance of $900,000 in accordance with the terms of the agreement between one of the Debtors with the City of Buffalo, one of the Debtors' customers, to support the Debtors' obligations thereunder.

01:13977053.1

- 6 -

## U.S. TRUSTEE GUIDELINES

17.     The U.S. Trustee Guidelines were adopted in order to assist the U.S.

Trustee in supervising the administration of chapter 11 cases.  The U.S. Trustee Guidelines

require chapter 11 debtors to, among other things:

<ol type="a">
<li value="a">close all existing bank accounts and open new accounts which must be designated debtor-in-possession bank accounts;</li>
<li value="b">establish and maintain separate debtor in possession accounts for the payment of taxes and separate debtor in possession accounts for cash collateral; and</li>
<li value="c">obtain and utilize new checks for all debtor in possession accounts which bear the designation "Debtor in Possession" and contain certain other information related to the chapter 11 case.</li>
</ol>

18.     The Debtors' continued use of the Bank Accounts is essential to their

smooth and orderly transition into chapter 11.  All parties in interest will be best served by the

continued use of the Bank Accounts as it will minimize disruption of the Debtors' businesses.

Moreover, change is unnecessary because the Cash Management System allows the Debtors to

differentiate between pre and postpetition transactions, account balances and obligations.  To

ensure that the maintenance of the current Cash Management System does not prejudice parties

in interest, the Debtors will separately record the balances of each of their Bank Accounts as of

the Petition Date so as to distinguish postpetition transfers and ensure that such transactions are

adequately and promptly documented in their books and records.  Accordingly, the Debtors

request a waiver of the U.S. Trustee Guidelines requiring that they close all existing Bank

Accounts and open new debtor-in-possession accounts.

19.     The Debtors further request that all Banks where the Debtors hold Bank

Accounts be authorized to:  (a) continue to administer the Bank Accounts in the manner

maintained prior to the Petition Date, without interruption, in the usual and ordinary course; and

01:13977053.1

(b) receive, process, honor and pay any and all checks, drafts, wires or ACH transfers drawn on

the Bank Accounts by the holders or makers thereof, as the case may be, in each case, drawn or

issued by the Debtors (i) after the Petition Date, or (ii) prior to the Petition Date, if such

applicable Bank has been specifically authorized to honor such check by order of this Court.

20.    The Debtors also request that, except for those checks that may be

honored and paid to comply with any orders of this Court authorizing payment of certain

prepetition claims (the "**Authorized Checks**"),[7] no checks or drafts issued on the Bank Accounts

before the Petition Date but presented for payment after the Petition Date shall be honored or

paid.  In order to minimize confusion, the Debtors will provide the Banks with a list of

outstanding prepetition checks with respect to the Authorized Checks within five (5) business

days of the entry of the order authorizing such Authorized Checks.

21.    The Debtors also seek a waiver of the requirement to establish specific

bank accounts for tax payments.  The Debtors believe that their tax obligations can be paid most

efficiently out of their existing Bank Accounts, that the U.S. Trustee can adequately monitor the

flow of funds into, among, and out of such accounts through required monthly operating reports,

---

[7]    The Debtors have filed the following motions seeking relief to pay prepetition amounts owed:  (i) Debtors' Motion for Order Authorizing (I) Debtors to Honor Certain Prepetition Practices in the Ordinary Course of Business and (II) Payment of Sales Taxes and Regulatory Fees; (ii) the Debtors' Motion for Order:  (I) Authorizing Debtors to Pay (A) Prepetition Employee Wages, Salaries and Other Compensation, (B) Prepetition Employee Business Expenses and (C) Other Miscellaneous Employee Expenses and Employee Benefits, and (II) Granting Related Relief; (iii) Debtors' Motion for Interim and Final Orders, Pursuant to Sections 105(a), 363(b) and 507(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 Authorizing Debtors to Pay Prepetition Claims of Critical Vendors and Suppliers of Goods Entitled to Administrative Priority; (iv) Motion for an Order Pursuant to Section 366 of the Bankruptcy Code (I) Prohibiting Utility Companies from Altering, Refusing, or Discontinuing Services; (II) Deeming Utility Companies Adequately Assured of Future Performance; (III) Establishing Procedures for Determining Adequate Assurance of Payment, and (IV) Setting a Final Hearing Related Thereto; and (v) Debtors' Motion for Order, Pursuant to Sections 105(a), 363(b), 363(c) and 1107(a) of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004 (h):  (I) Authorizing Debtors to (A) Continue Insurance Policies and Agreements Relating Thereto, (B) Honor Certain Prepetition Obligations in Respect Thereof, and (C) Continue Performance under Their Premium Financing Agreement; and (II) Granting Related Relief.

and that the creation of new debtor-in-possession accounts designated solely for tax obligations would be unnecessary and inefficient.

22.     Finally, to minimize administrative expense and delay, the Debtors request a waiver of the U.S. Trustee Guidelines and Local Rule 2015-2(a) to the extent they require checks issued by the Debtors be imprinted with the words "Debtor in Possession" and their bankruptcy case number; provided, that any new check stock purchased by the Debtors during the course of these cases shall bear a legend that:  (a) designates the Debtors as debtors in possession; and (b) sets forth the Debtors' jointly administered case number.

**BASIS FOR RELIEF**

D.     Section 345 Deposit and Investment Requirements

23.     Section 345 of the Bankruptcy Code governs a debtor's deposit and investment of cash during a chapter 11 case and authorizes the deposits or investments of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit on investment."  11 U.S.C. § 345(a).

24.     Section 345(b) of the Bankruptcy Code provides:

Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—

(1) a bond—

(A) in favor of the United States;

(B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and

(C) conditioned on—

(i) a proper accounting for all money so deposited or invested and for any return on such money;

(ii) prompt repayment of such money and return; and

(iii) faithful performance of duties as a depository; or

(2) the deposit of securities of the kind specified in section 9303 of title 31;

unless the court for cause orders otherwise.

11 U.S.C. § 345(b).

25.     The purpose of section 345(b) of the Bankruptcy Code is to protect creditors of an estate against a loss of funds of the estate through deposit or investment.  See 3 COLLIER ON BANKRUPTCY ¶ 345.04 (Lawrence P. King, 15th ed. rev'd 2008).  However, in 1994, in order to avoid "needlessly handcuff[ing] larger, more sophisticated debtors," the Bankruptcy Code was amended to allow bankruptcy courts to waive or modify the stringent requirements of section 345(b) of the Bankruptcy Code.  See 140 Cong. Rec. H10,767 (daily ed. October 4, 1994).

E.      The Debtors' Bank Accounts Are in
        Compliance with Section 345(b) of the Bankruptcy Code

26.     The Debtors are in compliance with section 345(b) of the Bankruptcy Code with respect to each of the Debtors' Bank Accounts.  First, the Debtors believe that all of the Bank Accounts, other than those held at Bank One regional banks that are affiliated with Chase, are maintained at banks approved by the U.S. Trustee as authorized bank depositories (each, an "**Authorized Depository**").[8]

---

[8]     The Collection Accounts, Operating Account, Payroll Accounts, Disbursement Accounts and all Petty Cash Accounts are maintained at Bank of Arizona, Chase, Wells Fargo, First Tennessee Bank and M&T Bank. Each of these Banks has been approved by the U.S. Trustee as an Authorized Depository.

27.     Further, federal deposit insurance now covers amounts up to $250,000.00. See 12 U.S.C. § 1821(a)(1)(E).  While the remaining accounts held at Bank One (Cleveland), Bank One (Indiana) and Bank One (Kentucky) (collectively, the "**Bank One Accounts**") are not maintained at Authorized Depositories, each of these accounts historically holds funds below the federal deposit insurance limit.  The Debtors will ensure that funds held in these Collection Accounts will not exceed the federal deposit insurance limit during these cases.  Because the Bank One Accounts are fully subject to federal deposit insurance, the Debtors submit that such Collection Accounts are in compliance with section 345(b) of the Bankruptcy Code.  Moreover, while Bank One is not an Approved Depository, it is a reputable and safe banking institution, and is affiliated with Chase, which is an Approved Depository.  Therefore, the Debtors do not believe a waiver of the deposit and investment requirements of section 345 of the Bankruptcy Code is necessary.  Accordingly, the Debtors believe that any funds that are deposited in their Bank Accounts are secure and, thus, the Debtors are in compliance with section 345(b) of the Bankruptcy Code with respect to such Bank Accounts.

28.     While the Debtors do not believe that they require a waiver of the requirements of section 345(b) of the Bankruptcy Code with respect to the Bank One Accounts (because the funds held therein do not exceed the federal deposit insurance limit), out of an abundance of caution, the Debtors request that the Court grant the Debtors an interim thirty (30) day waiver of the requirements of section 345(b) of the Bankruptcy Code while the Debtors work with the U.S. Trustee to confirm their compliance with section 345(b).

F.     Cause Exists to Permit the Debtors to Continue to Use Their
       Existing Check Stock Notwithstanding the U.S. Trustee Guideline

29.     As described above, the Debtors are requesting a waiver of the U.S. Trustee Guidelines and Local Rule 2015-2(a) to the extent they require checks issued by the

Debtors be imprinted with the words "Debtor in Possession" and their bankruptcy case number. However, to the extent the Debtors purchase new check stock during the course of these cases, such check stock shall bear a legend that designates the Debtors as debtors in possession and sets forth the Debtors' jointly administered case number.  The Debtors believe that to obtain new check stock at the outset of their cases, in strict compliance with the U.S. Trustee Guidelines and Local Rule 2015-2(a), is unnecessary and would be not an efficient use of estate resources. Further, as the Debtors intend to notify all of their known creditors of the commencement of these cases, and because the Debtors will, upon exhausting their existing check stock, purchase new check stock that complies with the U.S. Trustee Guidelines and Local Rule 2015-2(a), the Debtors submit that their creditors will not be harmed by virtue of the relief requested herein.

G.     Intercompany Claims Should be Treated As Administrative Expenses Pursuant to
       Sections 503(b)(1) and 364(b) of the Bankruptcy Code

       30.     The Debtors collect their revenue on the subsidiary level through the Collection Accounts.  Concentration and disbursement of funds, including payroll disbursements, are, however, administered on an enterprise-wide basis.  Notwithstanding this practice, the Debtors account for the Intercompany Claims through book entries on the Debtors' books and records.  To ensure that the Debtors will not, at the expense of creditors, fund the operation of an affiliated entity, the Debtors respectfully request that the Court, pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, authorize the Debtors to treat all Intercompany Claims arising after the Petition Date in the ordinary course of business as administrative expenses, junior in all respects to the superpriority claims of the Debtors' prepetition and postpetition secured lenders and subject to (a) the liens granted to the Debtors' postpetition secured lenders, (b) the liens granted to the Debtors' prepetition secured lenders as adequate protection for the diminution in value of such lenders' prepetition collateral (including,

without limitation, from the use of such lenders' cash collateral and the imposition of the automatic stay extant under section 362 of the Bankruptcy Code), (c) the carveout under the order(s) approving Debtors' debtor-in-possession financing and use of cash collateral, and (d) the liens granted under the Debtors' prepetition secured credit facility. Accordingly, if the Court authorizes the Debtors to treat these Intercompany Claims as administrative expenses, then each entity utilizing funds flowing through the Cash Management System will continue to bear ultimate repayment responsibility for such entity's individual obligations.

31.     This Court has routinely granted such authority in other chapter 11 cases for similar reasons. See, e.g., In re WP Steel Venture LLC, Case No. 12-11661 (KJC) (Bankr. D. Del. June 1, 2012); In re Satelites Mexicanos, S.A. de C.V., Case No. 11-11035 (CSS) (Bankr. D. Del. Apr. 11, 2011); In re Ambassadors International, Inc., Case No. 11-11002 (KG) (Bankr. D. Del. Apr. 5, 2011); In re Spheris Inc., Case No. 10-10352 (KG) (Bankr. D. Del. Feb. 4, 2010); In re International Aluminum Corp., Case No. 10-10003 (MFW) (Bankr. D. Del. Jan. 6, 2010); In re RathGibson, Inc., Case No. 09-12452 (CSS) (Bankr. D. Del. July 14, 2009).

32.     Based on the foregoing, the Debtors submit that the relief requested herein is necessary and appropriate, is in the best interests of their estates and all other interested parties, and should be granted in all respects.

33.     The Debtors further submit that because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors for the reasons set forth herein, Bankruptcy Rule 6003 has been satisfied.

## NOTICE

34.     Notice of this Motion will be given to: (a) the U.S. Trustee; (b) Credit Suisse, AG, as the administrative agent under the Debtors' prepetition secured credit agreement

and its counsel; (c) counsel to Wells Fargo, indenture trustee for the Debtors' senior unsecured notes and its counsel; (d) counsel to certain of the Debtors' senior unsecured noteholders; (e) the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; (f) Automatic Data Processing, Inc.; and (g) the Banks listed on Exhibit A.  The Debtors submit that, under the circumstances, no other or further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order,

substantially in the form annexed hereto as Exhibit C, granting the relief requested in the Motion

and such other and further relief for the Debtors as may be just and proper.

Dated: August 4, 2013
    Wilmington, Delaware

                    YOUNG CONAWAY STARGATT & TAYLOR, LLP


                    Edmon L. Morton (No. 3856)
                    Maris J. Kandestin (No. 5294)
                    Rodney Square
                    1000 North King Street
                    Wilmington, DE  19801
                    (302) 571-6600
                    (302) 571-1253 (Fax)
                    emorton@ycst.com
                    mkandestin@ycst.com

                            -and-

                    WILLKIE FARR & GALLAGHER LLP
                    Matthew A. Feldman
                    Rachel C. Strickland
                    Daniel I. Forman
                    787 Seventh Avenue
                    New York, New York 10019
                    (212) 728-8000
                    (212) 728-8111 (Fax)
                    mfeldman@willkie.com
                    rstrickland@willkie.com
                    dforman@willkie.com

                    *Proposed Co-Counsel to the Debtors and
                    Debtors in Possession*

## Schedule 1

The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, as applicable, are:

| | |
|---|---|
| Arizona EMS Holdings, Inc. (AZ) (7244) | Rural/Metro of Brewerton, Inc. (NY) (0912) |
| Beacon Transportation, Inc. (NY) (4028) | Rural/Metro of California, Inc. (DE) (8164) |
| Bowers Companies, Inc. (CA) (6465) | Rural/Metro of Central Alabama, Inc. (DE) (5348) |
| ComTrans Ambulance Service, Inc. (AZ) (6923) | Rural/Metro of Central Colorado, Inc. (DE) (6583) |
| Corning Ambulance Service, Inc. (NY) (5659) | Rural/Metro of Central Ohio, Inc. (DE) (2407) |
| Donlock, Ltd. (PA) (0659) | Rural/Metro of Greater Seattle, Inc. (WA) (6902) |
| E.M.S. Ventures, Inc. (GA) (3254) | Rural/Metro of Indiana, L.P. (DE) (9954) |
| Eastern Ambulance Service, Inc. (NE) (7359) | Rural/Metro of New York, Inc. (DE) (0083) |
| Eastern Paramedics, Inc. (DE) (1102) | Rural/Metro of Northern California, Inc. (DE) (3227) |
| Emergency Medical Transport, Inc. (AZ) (3878) | Rural/Metro of Northern Ohio, Inc. (DE) (8398) |
| EMS Ventures of South Carolina, Inc. (SC) (4174) | Rural/Metro of Ohio, Inc (DE) (0488) |
| Gold Cross Ambulance Service of PA, Inc. (OH) (9869) | Rural/Metro of Oregon, Inc. (DE) (3435) |
| Gold Cross Ambulance Services, Inc. (DE) (4792) | Rural/Metro of Rochester, Inc. (NY) (0148) |
| Lasalle Ambulance, Inc. (NY) (4422) | Rural/Metro of San Diego, Inc. (CA) (4132) |
| Medical Emergency Devices and Services (Meds), Inc. (AZ) (2218) | Rural/Metro of Southern California, Inc. (DE) (1679) |
| Mercury Ambulance Service, Inc. (KY) (8659) | Rural/Metro of Southern Ohio, Inc. (OH) (9303) |
| Metro Care Corp. (OH) (3994) | Rural/Metro of Tennessee, L.P. (DE) (3714) |
| National Ambulance & Oxygen Service, Inc. (NY) (9150) | Rural/Metro Operating Company, LLC (DE) (7563) |
| North Miss. Ambulance Service, Inc. (MS) (4696) | San Diego Medical Services Enterprise, L.L.C. (CA) (4136) |
| Pacific Ambulance, Inc. (CA) (7781) | Sioux Falls Ambulance, Inc. (SD) (4797) |
| Professional Medical Transport, Inc. (AZ) (6661) | Southwest Ambulance and Rescue of Arizona, Inc. (AZ) (9229) |
| R/M Arizona Holdings, Inc. (AZ) (6302) | Southwest Ambulance of Casa Grande, Inc. (AZ) (2807) |
| R/M Management Co., Inc. (AZ) (3444) | Southwest Ambulance of New Mexico, Inc. (NM) (5701) |
| R/M of Tennessee G.P., Inc. (DE) (0819) | Southwest Ambulance of Southeastern Arizona, Inc. (AZ) (8415) |
| R/M of Tennessee L.P., Inc. (DE) (0821) | Southwest Ambulance of Tucson, Inc. (AZ) (3618) |
| RMC Corporate Center, L.L.C. (AZ) (4546) | Southwest General Services, Inc. (AZ) (7537) |
| Rural/Metro (Delaware) Inc. (DE) (1572) | SW General Inc. (AZ) (4455) |
| Rural/Metro Corporation (AZ) (4388) | The Aid Ambulance Company, Inc. (DE) (4432) |
| Rural/Metro Corporation (DE) (6929) | The Aid Company, Inc. (IN) (8091) |
| Rural/Metro Corporation of Florida (FL) (4668) | Towns Ambulance Service, Inc. (NY) (8281) |
| Rural/Metro Corporation of Tennessee (TN) (9245) | Valley Fire Service, Inc. (DE) (6188) |
| Rural/Metro Fire Dept., Inc. (AZ) (3445) | W & W Leasing Company, Inc. (AZ) (1806) |
| Rural/Metro Mid-South, L.P. (DE) (4413) | WP Rocket Holdings, Inc. (DE) (9609) |

## EXHIBIT A

## Bank Accounts

| Bank | Last Four Digits of Account # | Account Description |
|---|---|---|
| Bank of Arizona | 8648 | Rural/Metro Corporation Operating Account |
| Bank of Arizona | 8670 | Rural/Metro Corporation Lockbox |
| Bank of Arizona | 8681 | Rural/Metro Corporation Lockbox |
| Bank of Arizona | 1736 | Rural/Metro Corporation Lockbox |
| Bank of Arizona | 8418 | Rural/Metro Corporation Lockbox |
| Bank of Arizona | 8429 | Rural/Metro Corporation Lockbox |
| Bank of Arizona | 8440 | Rural/Metro Corporation Lockbox |
| Bank of Arizona | 8451 | Rural/Metro Corporation Lockbox |
| Bank of Arizona | 8659 | Rural/Metro Corporation Petty Cash Account |
| Bank of Arizona | 8016 | Rural/Metro Corporation Cash Collateral Account |
| Bank One, Cleveland | 1533 | Rural/Metro of Northern Ohio, Inc. Lockbox |
| Bank One, Indiana | 3698 | Rural/Metro Corporation Deposit Account |
| Bank One, Kentucky | 8900 | Mercury Ambulance Service, Inc. Lockbox |
| First Tennessee Bank | 8989 | Rural/Metro Corporation Petty Cash Account |
| First Tennessee Bank | 8597 | Rural/Metro Corporation Petty Cash Account |
| JP Morgan Chase, N.A. | 7893 | Deposit Account |
| JP Morgan Chase, N.A. | 5580 | Rural/Metro Corporation Operating Account |
| JP Morgan Chase, N.A. | 7420 | Rural/Metro of California Operating Account |
| JP Morgan Chase, N.A. | 3826 | Rural/Metro Corporation Lockbox |
| JP Morgan Chase, N.A. | 9684 | Rural/Metro Corporation Lockbox |

| Bank | Last Four Digits of Account # | Account Description |
|------|------|------|
| JP Morgan Chase, N.A. | 5866 | Rural/Metro Corporation Lockbox |
| JP Morgan Chase, N.A. | 9232 | Rural/Metro Corporation of Tennessee Lockbox |
| JP Morgan Chase, N.A. | 8579 | Rural/Metro Corporation Lockbox |
| JP Morgan Chase, N.A. | 2957 | Rural/Metro of California Lockbox |
| JP Morgan Chase, N.A. | 0164 | Rural/Metro of Northern California Inc. Lockbox |
| JP Morgan Chase, N.A. | 1488 | Rural/Metro Corporation Accounts Payable - Disbursement Account |
| JP Morgan Chase, N.A. | 9438 | Rural/Metro Corporation Tax Disbursement Account |
| JP Morgan Chase, N.A. | 8083 | Rural/Metro Corporation Payroll Account |
| JP Morgan Chase, N.A. | 3357 | Rural/Metro Corporation Direct Deposit Payroll Account |
| JP Morgan Chase, N.A. | 7215 | Rural/Metro Corporation Petty Cash Account |
| JP Morgan Chase, N.A. | 6037 | Mercury Ambulance Service, Inc. Petty Cash Account |
| JP Morgan Chase, N.A. | 8533 | Rural/Metro Corporation Refund Disbursement Account |
| JP Morgan Chase, N.A. | 0320 | Rural/Metro Corporation Kaiser Disbursement Account |
| M&T Bank | 6037 | Rural/Metro Corporation Petty Cash Account |
| M&T Bank | 1181 | Rural/Metro Corporation Buffalo Cash Collateral Account |
| Wells Fargo Bank, N.A. | 0962 | Rural/Metro Corporation Operating Account |
| Wells Fargo Bank, N.A. | 7284 | Rural/Metro Corporation Lockbox |
| Wells Fargo Bank, N.A. | 1989 | Rural/Metro Corporation Lockbox |
| Wells Fargo Bank, N.A. | 1911 | Southwest Ambulance, Inc. Lockbox |

| Bank | Last Four Digits of Account # | Account Description |
|---|---|---|
| Wells Fargo Bank, N.A. | 7764 | San Diego Medical Services Lockbox |
| Wells Fargo Bank, N.A. | 7288 | Eastern Ambulance Service, Inc. Lockbox |
| Wells Fargo Bank, N.A. | 8080 | Rural/Metro Corporation Lockbox |
| Wells Fargo Bank, N.A. | 0610 | Pacific Ambulance Inc. Lockbox |
| Wells Fargo Bank, N.A. | 0628 | Pacific Ambulance Inc. Lockbox |
| Wells Fargo Bank, N.A. | 0644 | Bowers Companies Inc. Lockbox |
| Wells Fargo Bank, N.A. | 0677 | Bowers Companies Inc. Lockbox |
| Wells Fargo Bank, N.A. | 1077 | Rural/Metro Corporation Payroll Account |
| Wells Fargo Bank, N.A. | 0345 | Rural/Metro Corporation Petty Cash Account |
| Wells Fargo Bank, N.A. | 3199 | Rural/Metro Corporation Petty Cash Account |
| Wells Fargo Bank, N.A. | 2687 | Rural/Metro Corporation Petty Cash Account |
| Wells Fargo Bank, N.A. | 7867 | Rural/Metro Corporation Petty Cash Account |
| Wells Fargo Bank, N.A. | 9346 | Rural/Metro Corporation Petty Cash Account |
| Wells Fargo Bank, N.A. | 3415 | Rural/Metro Corporation Petty Cash Account |
| Wells Fargo Bank, N.A. | 2368 | Rural/Metro Corporation Petty Cash Account |
| Wells Fargo Bank, N.A. | 7473 | Rural/Metro Corporation Petty Cash Account |
| Wells Fargo Bank, N.A. | 7465 | Rural/Metro Corporation Petty Cash Account |

## Accounts in the Process of Closing

| Bank | Last Four Digits of Account # | Account Description |
|---|---|---|
| Pacific Western Bank | 3121 | Operating Account |
| Pacific Western Bank | 3012 | Lockbox |

| Bank | Last Four Digits of Account # | Account Description |
|---|---|---|
| Pacific Western Bank | 2920 | Lockbox |
| Pacific Western Bank | 3317 | Lockbox |
| Pacific Western Bank | 3219 | Lockbox |
| U.S. Bank | 2916 | Rural/Metro of Indiana, L.P. Lockbox |
| Wells Fargo Bank, N.A. | 7763 | Lockbox |

**EXHIBIT B**

Cash Flow Schematic



## **EXHIBIT C**

**Proposed Order**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------x
In re                                          :    Chapter 11
                                               :
Rural/Metro Corporation, et al.,[1]            :    Case No. 13-11952 (    )
                                               :
                    Debtors.                   :    (Joint Administration Pending)
---------------------------------------------------------x

## ORDER AUTHORIZING: (A) CONTINUED USE OF THE DEBTORS' CASH MANAGEMENT SYSTEM AND PROCEDURES; (B) MAINTENANCE AND CONTINUED USE OF EXISTING BANK ACCOUNTS; (C) WAIVER OF CERTAIN OPERATING GUIDELINES RELATING TO BANK ACCOUNTS; AND (D) CONTINUATION OF INTERCOMPANY TRANSACTIONS AND ACCORDANCE OF ADMINISTRATIVE EXPENSE STATUS TO INTERCOMPANY CLAIMS

Upon the motion (the "**Motion**") of the debtors and debtors in possession in the

above-captioned cases (collectively, the "**Debtors**") for an order, pursuant to sections 105(a),

345, 363, 364 and 503 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule

6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2015-2

of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court

for the District of Delaware (the "**Local Rules**") authorizing: (a) the continued use of the

Debtors' cash management system and procedures (the "**Cash Management System**");

(b) maintenance and continued use of their existing bank accounts; (c) a waiver of certain

operating guidelines relating to bank accounts; and (d) the continuation of intercompany

transactions and accordance of administrative expense status to claims for such transactions; and

upon the Declaration of Stephen Farber in Support of Chapter 11 Petitions and First Day

---

[1]    A list of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number is attached as Schedule 1 to the Declaration of Stephen Farber in Support of Chapter 11 Petition and First Day Pleadings [Docket No. 2] and at www.donlinrecano.com/rmc. The Debtors' headquarters are located at 9221 E. Via de Ventura, Scottsdale, AZ 85258.

01:13977053.1

Pleadings; and due and sufficient notice of the Motion having been given; and the Debtors

having complied with section 345(b) of the Bankruptcy Code with respect to the Bank Accounts;

and it appearing that no other or further notice need be provided; and it appearing that the relief

requested by this Motion is in the best interests of these estates, their creditors, and other parties

in interest; and the Court having jurisdiction over this matter pursuant 28 U.S.C. §§157(b)(2) and

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware dated as of February 29, 2012; and after due deliberation and sufficient

cause appearing therefor, it is hereby

ORDERED, ADJUDGED, and DECREED that:

1.    The Motion is granted to the extent set forth herein.

2.    Capitalized terms not otherwise defined herein shall have the meanings

ascribed to such terms in the Motion.

3.    The Debtors are authorized and empowered to continue to manage their cash

pursuant to the Cash Management System they maintained prior to the Petition Date, and to

collect and disburse cash in accordance with the Cash Management System.

4.    The requirements of the U.S. Trustee Guidelines that the Debtors close all

existing Bank Accounts and open new debtor-in-possession accounts are hereby waived.

Further, the requirements of the U.S. Trustee Guidelines that the Debtors establish specific bank

accounts for tax payments are hereby waived.

5.    The Debtors may disburse funds from the Bank Accounts by checks, drafts,

wires, debits, ACH transfers or by any other means.

6.    The requirements of the U.S. Trustee Guidelines that any postpetition checks

issued by the Debtors be imprinted with the words "Debtor in Possession" and their bankruptcy

case number are hereby waived; <u>provided</u>, that any new check stock purchased by the Debtors during the course of these cases shall bear a legend (either printed or stamped) containing the information required by the U.S. Trustee Guidelines.

7.    The Debtors are authorized to continue to invest and deposit funds in the Bank Accounts in accordance with their prepetition practices, without the need for a bond or other collateral as required by section 345(b) of the Bankruptcy Code, and the Debtors and the Banks shall be excused from compliance with the requirements of section 345(b) of the Bankruptcy Code, to the extent necessary, for a period of thirty (30) days from the date hereof, without prejudice to the Debtors' right to seek a further waiver if necessary.

8.    All applicable Banks and other financial institutions are authorized to accept and hold or invest funds in accordance with the Debtors' prepetition investment practices.

9.    The Banks where the Debtors maintain the Bank Accounts are authorized to continue to service and administer the Bank Accounts as accounts of the Debtors as debtors in possession without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks, drafts, wires or ACH transfers issued or initiated by the Debtors, and drawn on the Bank Accounts, after the Petition Date by the holders or makers thereof, as the case may be, provided there are sufficient funds, whether deposited prior or subsequent to the Petition Date, in the requisite Bank Account, or otherwise available to cover and permit payment thereof.

10.    All Banks where the Debtors maintain Bank Accounts are hereby authorized to: (a) continue to service and administer the Bank Accounts in the manner maintained prior to the Petition Date, without interruption, in the usual and ordinary course; (b) continue to deduct, without further order of this Court, from the appropriate Bank Accounts the Banks' customary

fees and expenses associated with the nature of the deposit or cash management or custodial services rendered to the Debtors; and (c) to receive, process, honor and pay any and all checks, drafts, wires or ACH transfers drawn on the Bank Accounts by the holders or makers thereof, as the case may be, drawn or issued by the Debtors (i) after the Petition Date, or (ii) prior to the Petition Date, if such applicable Bank has been specifically authorized to honor such check by order of this Court.

11. Except for those checks that may be honored and paid in compliance with any order of this Court authorizing payment of certain prepetition claims (the "**Authorized Checks**"), and the Banks having received a written list of such Authorized Checks from the Debtors within five (5) business days of the entry of the order authorizing such Authorized Checks, no checks or drafts issued on the Bank Accounts before the Petition Date but presented for payment after the Petition Date shall be honored or paid.

12. Notwithstanding any other provision of this Order, no Bank that honors a prepetition check or other item drawn on any account that is the subject of this Order: (a) in a good faith belief that the Court has authorized such prepetition check or item; or (b) as the result of a good faith error made despite implementation of reasonable item handling procedures, shall be deemed to be liable to the Debtors or their estates or otherwise in violation of this Order.

13. The Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by any Debtor prior to the Petition Date should be honored pursuant to this or any other order of this Court, and the Banks shall not have any liability to any party for relying on such representations by any Debtor as provided for herein.

14.     The Debtors shall record the consolidated balances of each of their Bank Accounts so that all postpetition transfers and transactions respecting such Bank Accounts shall be adequately and promptly documented in, and readily ascertainable from, their books and records, to the same extent maintained by the Debtors prior to the commencement of these chapter 11 cases.

15.     Intercompany Claims are hereby granted administrative expense status pursuant to sections 503(b)(1) and 364(b) of the Bankruptcy Code, junior in all respects to the superpriority claims of the Debtors' prepetition and postpetition secured lenders and subject to (a) the liens granted to the Debtors' postpetition secured lenders, (b) the liens granted to the Debtors' prepetition secured lenders as adequate protection for the diminution in value of such lenders' prepetition collateral (including, without limitation, from the use of such lenders' cash collateral and the imposition of the automatic stay extant under section 362 of the Bankruptcy Code), (c) the carveout under the order(s) approving Debtors' debtor-in-possession financing and use of cash collateral, and (d) the liens granted under the Debtors' prepetition secured credit facility.  The Debtors shall continue to account for the Intercompany Claims through book entries on the Debtors' books and records.

16.     Nothing contained herein shall prevent the Debtors from opening any additional bank accounts, or closing any existing Bank Accounts, including opening additional accounts to maintain restricted cash to allow for the issuance of letters of credit, as they may deem necessary and appropriate; provided, however, that the opening or closing of any Bank Account shall be without prejudice to the liens, if any, granted to the administrative agents (the "**Administrative Agents**") under (A) the Debtors' prepetition credit agreement and (B) the Debtors' postpetition debtor-in-possession credit agreement.  The Banks are authorized to honor

the Debtors' request to open or close, as applicable, such Bank Accounts or other bank accounts. The Debtors shall notify the Administrative Agents and the U.S. Trustee of the opening of any new Bank Accounts or closing of any existing Bank Accounts by providing written notice to such parties no less than five (5) business days prior to any proposed opening or closing of any Bank Accounts.

17.     As promptly as possible, but in no event later than five (5) business days after entry of this Order, the Debtors shall serve a copy of this Order on all Banks whose Bank Accounts are listed on Exhibit A to the Motion.

18.     Nothing contained in this Order or the Motion, nor as a result of any payment made pursuant to this Order, shall be deemed or construed as an admission as to the validity or priority of any claim against the Debtors or constitute a rejection or assumption by the Debtors of any agreement, contract or lease, pursuant to section 365 of the Bankruptcy Code, and the Debtors reserve all rights with respect thereto.  Nothing contained in this Order or the Motion shall be deemed or construed as a waiver of the rights of the Debtors, or shall impair the ability of the Debtors to contest the validity of any payment made pursuant to this Order.

19.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied with respect to the relief granted by this Order.

20.     Notwithstanding any Bankruptcy Rule to the contrary, this Order shall be immediately effective and enforceable upon its entry.

21.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation or interpretation of this Order.

Dated: _____, 2013
       Wilmington, Delaware

_____
UNITED STATES BANKRUPTCY JUDGE