

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------x
In re                                              :    Chapter 11
                                                   :
Rural/Metro Corporation, et al.,[1]                :    Case No. 13-11952 (KJC)
                                                   :
            Debtors.                               :    (Jointly Administered)
                                                   :
                                                   :    Re: Docket No. 10
------------------------------------------------------x

**INTERIM ORDER, PURSUANT TO
SECTIONS 105(a), 363(b), 503(b) AND 507(a) OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULES 6003 AND 6004, AUTHORIZING
DEBTORS TO PAY PREPETITION CLAIMS OF CRITICAL VENDORS
AND SUPPLIERS OF GOODS ENTITLED TO ADMINISTRATIVE PRIORITY**

Upon the motion (the "**Motion**") of the debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") for an Interim Order[2] and Final Order, pursuant to sections 105(a), 363(b), 503(b), 507(a), 1107(a) and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing Debtors to pay prepetition claims of critical vendors, including certain claims entitled to administrative priority, and scheduling a final hearing on the Motion; and upon the Declaration of Stephen Farber in Support of Chapter 11 Petitions and First Day Pleadings; and it appearing that jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012; and due and sufficient notice of the

---

[1]     A list of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number is attached as Schedule 1 to the Declaration of Stephen Farber in Support of Chapter 11 Petition and First Day Pleadings [Docket No. 2] and at www.donlinrecano.com/rmc. The Debtors' headquarters are located at 9221 E. Via de Ventura, Scottsdale, AZ 85258.

[2]     Capitalized terms used but not defined herein shall have the same meanings ascribed to them in the Motion.

1

Motion having been given; and it appearing that no other or further notice need be provided; and it appearing that the relief requested by this Motion is in the best interest of these estates, their creditors, and other parties in interest; and after due deliberation and sufficient cause appearing therefore, it is, hereby

ORDERED, ADJUDGED, AND DECREED that:

1. The Motion is granted on an interim basis, as set forth herein.

2. The Debtors are authorized, but not directed to pay, in their sole discretion, in the ordinary course of their businesses, the Critical Vendor Claims, in an amount not to exceed $3,000,000 in the aggregate.

3. The Debtors are authorized, but not directed, to undertake appropriate efforts to cause Critical Vendors to enter into Trade Agreements with the Debtors substantially similar to that annexed as <u>Exhibit A</u> to the Motion, as a condition of payment of each such Critical Vendor's Critical Vendor Claim.

4. The Debtors are authorized, in their discretion, to make payments on account of a Critical Vendor Claim, subject to the other limits set forth herein, even in the absence of a Trade Agreement, if the Debtors determine, in their business judgment, that failure to pay such Critical Vendor Claim is likely to harm the Debtors' business operations.

5. If a Critical Vendor refuses to supply goods and/or services to the Debtors on Customary Trade Terms (or such other terms as are agreed by the parties) following receipt of payment on its Critical Vendor Claim (regardless of whether such Critical Vendor has entered into a Trade Agreement), or fails to comply with any Trade Agreement entered into between such Critical Vendor and the Debtors, then the Debtors may, in their discretion and without further order of the Court: (a) declare that any Trade Agreement between the Debtors

2

and such Critical Vendor is terminated; (b) declare that payments made to such Critical Vendor on account of its Critical Vendor Claims shall be deemed to have been in payment of then-outstanding or subsequently accruing postpetition claims of such Critical Vendor; and (c) seek recovery of any payment made to such Critical Vendor on account of its Critical Vendor Claims to the extent that such payments exceeded the postpetition claims of such Critical Vendor, without giving effect to any rights of setoff, claims, provision of payment of reclamation or trust fund claims or other defense. Nothing herein shall constitute a waiver of the Debtors rights to seek damages or other appropriate remedies against any breaching Critical Vendor.

6. Notwithstanding the foregoing, the Debtors may, in their sole discretion, reinstate a Trade Agreement if:

(a) the underlying default under the Trade Agreement is fully cured by the Critical Vendor not later than five (5) business days following the Debtors' notification to the Critical Vendor of such default had occurred; or

(b) the Debtors, in their sole discretion, reach a favorable alternative agreement with the Critical Vendor.

7. Nothing herein shall be construed to limit, or in any way affect, the Debtors' ability to dispute any Critical Vendor Claim.

8. Nothing contained in the Motion or this Interim Order, or the Debtors' payment of any claims pursuant to this Interim Order, shall be deemed or construed: (a) as an admission as to the validity of any claim or Lien against the Debtors or their estates; (b) as a waiver of the Debtors' right to dispute any claim or Lien; (c) as approval or assumption or rejection of any executory contract or unexpired lease pursuant to section 365 of the Bankruptcy Code between a Debtor and a Critical Vendor; (d) as an admission of the priority status of any claim, whether under section 503(b)(9) of the Bankruptcy Code or otherwise; (e)

to require the Debtors to make any of the payments authorized herein; or (f) to prejudice the Debtors' rights to seek relief under any section of the Bankruptcy Code on account of any amounts owed or paid to any Critical Vendor.

9. The authorization granted hereby to pay Critical Vendor Claims shall not create any obligation on the part of the Debtors or their officers, directors, attorneys or agents to pay the Critical Vendor Claims, none of the foregoing persons shall have any liability on account of any decision by the Debtors not to pay a Critical Vendor Claim, and nothing contained in this Interim Order shall be deemed to increase, reclassify, elevate to an administrative expense status or otherwise affect the Critical Vendor Claims to the extent they are not paid.

10. The amount of any Critical Vendor Claim set forth in a Trade Agreement shall be used only for purposes of determining a Critical Vendor's claim under this Interim Order and shall not be deemed a claim allowed by the Court, and the rights of all interested persons to object to such claim shall be fully preserved until further order of the Court. Further, signing a Trade Agreement containing a claim amount for purposes of this Interim Order shall not excuse such Critical Vendor from filing a proof of claim in these cases on account of prepetition amounts that may remain unpaid.

11. No claimant who receives payment on account of a Critical Vendor Claim (whether or not such claimant signs a Trade Agreement) is permitted to: (a) file or perfect a Lien on account of such claim, and any such claimant shall take all necessary action to remove any existing Lien relating to such claim, even if the Lien is against property of a non-Debtor; or (b) seek payment for a Reclamation Claim, 503(b)(9) Claim or similar claim outside of the terms of this Interim Order.

12. Notwithstanding the relief granted herein and any actions taken hereunder, nothing contained herein shall create, nor is it intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

13. Nothing in this Interim Order shall prohibit the Debtors from seeking Court approval to increase the prepetition amounts authorized to be paid hereunder.

14. The execution of a Trade Agreement by the Debtors shall not be declared a waiver of any other cause of action, including avoidance actions, which may be held by the Debtors.

15. All applicable banks and other financial institutions are hereby authorized to receive, process, honor, and pay any and all checks and transfer requests evidencing amounts paid by the Debtors under this Interim Order whether presented prior to or after the Petition Date, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. Such banks and financial institutions are authorized to rely on the representations of the Debtors as to which checks are issued or authorized to be paid pursuant to this Interim Order.

16. The Motion and this Interim Order shall be served by overnight mail, hand delivery or fax on each Critical Vendor the Debtors believe could be affected by the relief requested in the Motion and all other parties required to receive service under Rule 2002-1(b) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**") within three (3) business days of entry of this Interim Order.

17. The Debtors shall provide the Critical Vendor list on a confidential basis to: (a) counsel to the agents for the Debtors' prepetition senior secured lenders; (b) Wells Fargo,

01:13977153.4

indenture trustee for the 10.125% Senior Notes due 2019 issued under (i) that certain Indenture dated as of June 30, 2011 among WP Rocket Merger Sub Inc., Rural/Metro, the guarantors party thereto and Wells Fargo, as Trustee, and (ii) that certain Indenture dated as of February 3, 2012 among Rural/Metro, the guarantors party thereto and Wells Fargo, as Trustee; (c) counsel to the Ad Hoc Committee of Noteholders; (d) upon request, the chambers of the United States Bankruptcy Judge assigned to these cases; (e) upon request, the official committee of unsecured creditors that may be appointed in these cases (the "Committee"); and (f) upon request, the U.S. Trustee.

18. Any responses or objections to entry of the Final Order must (a) be made in writing, (b) state with particularity the grounds therefor, (c) conform to the Bankruptcy Rules and the Local Rules, (d) be filed with the clerk of this Court, and (e) be served upon (i) the Office of The United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Mark Kenney, Esq.), (ii) counsel to any official committee appointed in these cases, (iii) co-counsel to the Debtors, Young Conaway Stargatt & Taylor, LLP, Rodney Square, 1000 North King Street, Wilmington, DE 19801, Attn: Edmon Morton, Esq. and Maris J. Kandestin, Esq., (iv) co-counsel to the Debtors, Willkie Farr & Gallagher LLP, 787 Seventh Avenue, New York, NY 10019, Attn: Rachel C. Strickland, Esq. and Daniel I. Forman, Esq., (v) counsel to the administrative agent under the Debtors' prepetition and postpetition secured credit agreement, and (vi) counsel to the Ad Hoc Committee of Noteholders, 233 South Wacker Drive, Suite 5800, Chicago, IL 60606, Attn: David S. Heller, Esq. and Josef S. Athanas (collective, the "**Notice Parties**").

19. The deadline by which objections to the Motion and the Final Order must be filed and received by the Notice Parties is August 21, 2013 at 4:00 p.m. (prevailing Eastern

Time). A final hearing, if required, on the Motion will be held on August 28, 2013 at 1:00 p.m. (prevailing Eastern Time). If no objections are filed to the Motion and entry of the Final Order, the Court may enter the Final Order without further notice or a hearing.

20. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

21. Notwithstanding anything to the contrary contained herein, (a) any payment made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under any order regarding debtor-in-possession financing or the use of cash collateral, and (b) any claim for which payment is authorized pursuant to this Order that is treated as an administrative expense of the Debtors' estates shall be and is subject and subordinate to any and all claims, liens, security interests and priorities granted to the Debtors' secured prepetition and postpetition lenders (and their respective agents) pursuant to any other order of the Court (including any order regarding debtor-in-possession financing or the use of cash collateral), and no payment shall be made on any such claim except as permitted under any order regarding debtor-in-possession financing or the use of cash collateral.

22. Bankruptcy Rule 6003(b) has been satisfied because the relief requested in the Motion is necessary to avoid immediate and irreparable harm to the Debtors.

23. Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry hereof.

01:13977153.4

24. This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation and/or interpretation of this Interim Order.

Dated: Wilmington, Delaware
　　　　Aug 6, 2013

_____
THE HONORABLE KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

01:13977153.4