IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------x
In re                                   :   Chapter 11
                                        :
Rural/Metro Corporation, et al.,[1]     :   Case No. 13-11952 (KJC)
                                        :
            Debtors.                    :   (Jointly Administered)
                                        :   **Hearing Date: August 28, 2013 at 4:00 p.m.**
                                        :   **Obj. Deadline: August 21, 2013 at 4:00 p.m.**
------------------------------------------------------x

## DEBTORS' APPLICATION FOR ORDER AUTHORIZING AND APPROVING THE EMPLOYMENT AND RETENTION OF LAZARD FRÈRES & CO. LLC AND LAZARD MIDDLE MARKET LLC AS INVESTMENT BANKER TO THE DEBTORS NUNC PRO TUNC TO THE PETITION DATE AND WAIVING THE REQUIREMENTS OF LOCAL RULE 2016-2(D)

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**," as applicable, or the "**Company**") hereby submit this application (this "**Application**") for entry of an order, pursuant to sections 327(a) and 328(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), as supplemented by Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), authorizing and approving, effective as of the Petition Date (defined below), the (i) employment and retention of Lazard Frères & Co. LLC ("**Lazard Frères**") and Lazard Middle Market LLC ("**LMM**" and, together with Lazard Frères, "**Lazard**") as investment banker to the Debtors and (ii) waiving certain informational requirements of Local Rule 2016-2(d). In support of this Application, the Debtors rely upon and incorporate by

---

[1]   A list of the Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number is attached as Schedule 1 to the Declaration of Stephen Farber in Support of Chapter 11 Petition and First Day Pleadings [Docket No. 2] and at www.donlinrecano.com/rmc. The Debtors' headquarters are located at 9221 E. Via de Ventura, Scottsdale, AZ 85258.

reference the Declaration of Stephen Farber in Support of Chapter 11 Petitions and First Day Pleadings (the "**Farber Declaration**"), which was filed with the Court on the Petition Date (as defined below), and the Declaration of J. Blake O'Dowd in Support of Debtors' Application for Order Authorizing and Approving, Effective as of the Petition Date, the Employment and Retention of Lazard Frères & Co. LLC and Lazard Middle Market LLC as Investment Banker to the Debtors Nunc Pro Tunc to the Petition Date and Waiving the Requirements of Local Rule 2016-2(d) (the "**O'Dowd Declaration**"), a copy of which is attached hereto as Exhibit A. In further support of the Application, the Debtors, by and through their proposed undersigned co-counsel, respectfully represent as follows:

## BACKGROUND

1. On August 4, 2013 (the "**Petition Date**"), Rural/Metro Corporation ("**Rural/Metro**") and each of the other Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are continuing in the possession of their respective properties and the management of their respective businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. These chapter 11 cases have been consolidated for procedural purposes only. As of the date hereof, no trustee, examiner or official committee has been appointed in any of the Debtors' cases.

2. The events leading up to the Petition Date and the facts and circumstances supporting the relief requested herein are set forth in the Farber Declaration.

## JURISDICTION

3. This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. This is a core

proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code, as supplemented by Rule 2014 of the Bankruptcy Rules and Rule 2014-1 of the Local Rules.

## RELIEF REQUESTED

4. By this Application, the Debtors seek entry of an order authorizing, pursuant to sections 327 and 328 of the Bankruptcy Code, the employment and retention of Lazard as investment banker to the Debtors, *nunc pro tunc* to the Petition Date, in accordance with the terms of the proposed order (the "**Proposed Order**"), attached hereto as Exhibit B, and the engagement letter dated June 25, 2013 among Lazard Frères, Willkie Farr & Gallagher LLC as counsel to Rural/Metro and its controlled subsidiaries, and Rural/Metro on behalf of itself and its controlled subsidiaries (together with the "Indemnification Agreement" incorporated therein, the "**Engagement Letter**"), attached as Exhibit 1 to the Proposed Order.[2]

## LAZARD'S QUALIFICATIONS

5. In light of the size and complexity of these reorganization cases, the Debtors require a qualified and experienced investment banker with the resources, capabilities and experience of Lazard to assist them in pursuing the transaction(s) that are crucial to the success of the Debtors' cases. An investment banker, such as Lazard, fulfills a critical service that complements the services provided by the Debtors' other professionals.

6. Lazard Frères is the primary U.S. operating subsidiary of a preeminent international investment banking, financial advisory, and asset management firm with its principal office located at 30 Rockefeller Plaza, New York, NY. LMM is a wholly-owned

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Engagement Letter.

subsidiary of Lazard Frères. Together with its predecessors and affiliates, Lazard has been advising clients around the world for over 150 years. Lazard and its professionals have considerable expertise and experience in providing investment banking and financial advisory services to financially distressed companies and to creditors, equity holders, and other constituencies in reorganization proceedings and complex financial restructurings, both in and out of court.

7. The Debtors seek to retain Lazard as their investment banker because, among other things, Lazard and its senior professionals have an excellent reputation for providing high quality financial advisory and investment banking services to debtors and creditors in bankruptcy reorganizations and other debt restructurings, and have extensive knowledge of the Debtors' financial and business operations. Prior to the Petition Date, the Debtors engaged Lazard to provide advice in connection with the Debtors' attempts to complete a strategic restructuring, reorganization and/or recapitalization and to prepare for the commencement of these cases. In providing prepetition services to the Debtors in connection with these matters, Lazard's professionals have worked closely with the Debtors' management and other professionals and have become well acquainted with the Debtors' operations, debt structure, creditors, business and operations and related matters. Accordingly, Lazard has developed significant relevant experience and expertise regarding the Debtors' businesses that will assist it in providing effective and efficient services in these cases. Should the Court approve the Debtors' retention of Lazard as investment banker, Lazard will continue, without interruption, to perform the services for the Debtors as described herein.

8. Lazard's business restructuring professionals have served as financial and strategic advisors in numerous cases in this District and other jurisdictions. These include the

chapter 11 cases of Adelphia Communications Corporation, Calpine Corporation, Capmark Financial Group Inc., Charter Communications, Citadel Broadcasting Corporation, Daewoo Corporation, Eastman Kodak Company, Lehman Brothers Holdings, Inc., Movie Gallery, Inc., Northwest Airlines Inc., The Great Atlantic & Pacific Tea Company, WCI Communities, Inc., Wellman, Inc., and Worldcom, Inc. In the District of Delaware, chapter 11 cases where Lazard has provided financial advisory services include, among others, Armstrong World Industries, Inc., Fruit of the Loom, Inc., GenTek Inc., Hayes Lemmerz International, Inc., Indianapolis Downs, LLC, Kaiser Aluminum Corporation, LandSource Communities Development LLC, Meridian Automotive Systems, Inc., New Century TRS Holdings, Inc., NewPage Corporation, Owens Corning, Sun Healthcare Group, Inc., Tropicana Entertainment, LLC, Vertis Holdings, Inc., Vlasic Foods International Inc, and Exide Technologies. The Debtors believe that Lazard has the requisite qualifications and experience to serve as their investment banker.

9. Lazard commenced its engagement with the Debtors in June 2013 to provide certain investment banking and financial advisory services pursuant to the Engagement Letter. Since commencing this engagement, Lazard has worked closely with the Debtors' management, creditors and other professional advisors in exploring various strategic, financial and restructuring alternatives and otherwise assisting the Debtors in preparation for the commencement of these chapter 11 cases. As a result, Lazard has developed significant relevant experience and expertise regarding the Debtors and their situation, and is well qualified to represent the Debtors as investment banker in connection with such matters in a cost-effective and efficient manner.

10. Consequently, the Debtors believe that Lazard has developed significant relevant experience and expertise regarding the Debtors and their current situation and is thus

both well-qualified and uniquely suited to provide the required services in these chapter 11 cases. Indeed, if the Debtors were required to retain an investment banker other than Lazard in connection with these chapter 11 cases, the Debtors, their estates, and all parties in interest would be unduly prejudiced by the time and expenses necessary to familiarize another professional with the intricacies of the Debtors and their business operations.

11.   The Debtors require a knowledgeable investment banker to render essential restructuring services. By virtue of its prepetition representation of the Debtors and other entities, Lazard is well qualified to provide these services and represent the Debtors' interests in these chapter 11 cases. Accordingly, the Debtors submit that the retention of Lazard should be approved.

## SCOPE OF SERVICES

12.   The Engagement Letter governs the relationship between Lazard and the Debtors. The terms and conditions of the Engagement Letter were negotiated between the Debtors and Lazard and reflect the parties' mutual agreement as to the substantial efforts that will be required in this engagement. Under the Engagement Letter, in consideration for the compensation contemplated thereby, Lazard has provided and has agreed to provide the services set forth in the Engagement Letter, as summarized below:[3]

    (a)    Reviewing and analyzing the Debtors' businesses, operations and financial projections;

    (b)    Evaluating the Debtors' potential debt capacity in light of their projected cash flows;

    (c)    Assisting in the determination of a capital structure for the Debtors;

---

[3]   All summaries herein of terms contained in the Engagement Letter are provided for convenience only. The terms set forth in the Engagement Letter control in all respects.

(d) Assisting in the determination of a range of values for the Debtors on a going concern basis;

(e) Advising on tactics and strategies for negotiating with the Stakeholders;

(f) Rendering financial advice and participating in meetings or negotiations with the Stakeholders and/or rating agencies or other appropriate parties in connection with any Restructuring;

(g) Advising on the timing, nature, and terms of new securities, other consideration or other inducements to be offered pursuant to any Restructuring;

(h) Evaluating any potential Financing transaction by the Debtors, and, subject to Lazard's agreement so to act and, if requested by Lazard, to execution of appropriate agreements, contacting potential sources of capital as the Debtors may designate and assisting in implementing such Financing;

(i) Assisting in preparing documentation within Lazard's area of expertise that is required in connection with any Restructuring;

(j) Assisting in identifying and evaluating candidates for any potential Sale Transaction, and advising in connection with negotiations and aiding in the consummation of any Sale Transaction;

(k) Attending meetings of the Board of Directors of Rural/Metro with respect to matters on which Lazard has been engaged to advise hereunder;

(l) Providing testimony, as necessary, with respect to matters on which Lazard has been engaged to advise hereunder in any proceeding before the Bankruptcy Court; and

(m) Providing other financial restructuring advice.

13. Notwithstanding anything to the contrary set forth in the Engagement Letter, such services may be provided at the request of the Debtors or Counsel and such services shall be for the benefit of the Debtors and not Counsel.

14. The services that Lazard will provide are necessary to enable the Debtors to maximize the value of their estates. Such professional services are necessary to the Debtors' restructuring efforts under chapter 11 of the Bankruptcy Code and in the ongoing operation and

01:13990125.1

management of the Debtors' businesses and assets. Lazard has considerable experience in providing these and other services to financially troubled companies.

15. Contemporaneously herewith, the Debtors have applied to the Court to retain Willkie Farr & Gallagher LLP and Young Conaway Stargatt & Taylor, LLP as general bankruptcy co-counsel, Alvarez & Marsal Healthcare Industry Group, LLC as financial advisor, FTI Consulting, Inc. as financial advisor, and Donlin, Recano & Company, Inc. as administrative agent. The Debtors may also seek to retain other professionals to perform services regarding discrete or specialized matters.

16. The Debtors believe that the services of Lazard will not duplicate the services that other professionals will be providing to the Debtors in these chapter 11 cases. Specifically, Lazard will carry out unique functions and will use reasonable efforts to coordinate with the Debtors' other retained professionals to avoid unnecessary duplication of effort or cost.

17. Lazard has and will continue to play a vital role in analyzing and negotiating critical aspects of the Debtors' restructuring and plan of reorganization, including the Debtors' proposed new credit facility, the structure of the plan and the preparation of a valuation of the reorganized Debtors. Lazard also has and will continue to evaluate strategic alternatives for the Debtors in their efforts to maximize the value of their estates. Lazard has and will participate in discussions and meetings with the Debtors' key creditor constituencies, including the prepetition senior secured lenders, the prepetition unsecured noteholders—and other unsecured creditors, the prepetition equity interest holders, any statutory committee appointed in these cases and other parties-in-interest and their advisors. These activities may require preparing materials and analyses, facilitating diligence requests and providing such advisory

services as have been agreed and are customary with regard to restructuring the Debtors' obligations.

## COMPENSATION

18. In consideration of the services to be provided by Lazard, the Debtors have, in addition to the Indemnification Obligations (defined below), agreed to compensate and reimburse Lazard as set forth in the Engagement Letter (the "**Fee and Expense Structure**"), as summarized below:

(a) Monthly Fee: $150,000 per month until the earlier of (i) the completion of the Restructuring, or (ii) the termination of Lazard's engagement.

(b) Restructuring Fee: $4,750,000 upon the consummation of a Restructuring.

(c) Sale Fee:

    (i) $4,750,000 upon consummation of a Sale Transaction incorporating all or a majority of the assets or all or a majority or controlling interest in the equity securities of the Debtors; or

    (ii) (ii) A fee[4] based on the Aggregate Consideration upon consummation of a Sale Transaction not covered by clause (i).

(d) Financing Fee: Upon consummation of a Financing, 1.00% of the aggregate gross proceeds thereof (including any committed but undrawn amounts).

(e) Crediting: Monthly Fees that have actually been earned and paid to Lazard shall be credited (without duplication) against any Restructuring Fee or Sale Fee.

(f) Multiple Fees: For the avoidance of doubt, more than one fee may be payable pursuant to each of subsections (b), (c) or (d) above.

---

[4] Such a fee will be calculated based on the formula set forth in Schedule I of the Engagement Letter.

01:13990125.1

  (g) <u>Expense Reimbursement</u>:  In addition to the fees payable to Lazard, the Debtors will reimburse Lazard for all reasonable expenses incurred, including travel and lodging, data processing and communications charges, courier services, and reasonable fees and expenses of outside counsel.

## **INDEMNIFICATION**

19. As part of the compensation payable to Lazard under the terms of the Engagement Letter, the Debtors have agreed to certain exculpation, indemnification, contribution and reimbursement obligations (the "**Indemnification Obligations**") as described in that certain Indemnification Letter dated as of June 25, 2013, a copy of which is attached together with the Engagement Letter as Exhibit 1.  Among other things, the Indemnification Obligations provide that, in the event that any of the Indemnified Persons (as defined in the Indemnification Letter) become involved in any capacity in any action, claim, proceeding or investigation brought or threatened by or against any person, including the Debtors' securityholders, related to, arising out of or in connection with Lazard's engagement, the Debtors will promptly reimburse each such Indemnified Person for its reasonable and reasonably documented out-of-pocket legal and other expenses (including the cost of any investigation and preparation) as and when they are incurred in connection therewith.  Additionally, the Debtors will indemnify and hold harmless each Indemnified Person from and against any losses, claims, damages, liabilities or expenses to which any Indemnified Person may become subject under any applicable federal or state law, or otherwise, related to, arising out of or in connection with Lazard's engagement, whether or not any pending or threatened action, claim, proceeding or investigation giving rise to such losses, claims, damages, liabilities, or expenses is initiated or brought by the Debtors or on the Debtors' behalf and whether or not in connection with any action, claim, proceeding or investigation in which Rural/Metro or any such Indemnified Person are a party, except to the extent that any such loss, claim, damage, liability or expense is found by a court of competent jurisdiction in a

01:13990125.1

- 10 -

judgment which has become final in that it is no longer subject to appeal or review to have resulted primarily from such Indemnified Person's bad faith, willful misconduct or gross negligence.

20. The Debtors believe that the Indemnification Obligations are customary and reasonable for investment banking engagements, both out-of-court and in chapter 11 cases, and, as would be modified by the Proposed Order, reflect the qualifications and limitations on indemnification provisions that are customary in this District and other jurisdictions. Similar indemnification provisions were included in cases Lazard has been involved in, including, among others, Armstrong World Industries, Inc., Fruit of the Loom, Inc., GenTek Inc., Hayes Lemmerz International, Inc., Indianapolis Downs, LLC, Kaiser Aluminum Corporation, LandSource Communities Development LLC, Meridian Automotive Systems, Inc., New Century TRS Holdings, Inc., NewPage Corporation, Owens Corning, Sun Healthcare Group, Inc., Tropicana Entertainment, LLC, Vertis Holdings, Inc., and Vlasic Foods International Inc.

21. The terms and conditions of the Engagement Letter, including the Indemnification Obligations, were negotiated by the Debtors and Lazard at arm's length and in good faith. The Debtors respectfully submit that the indemnification provisions contained in the Engagement Letter, viewed in conjunction with the other terms of Lazard's proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require Lazard's services for a successful result in these cases.

22. Accordingly, as part of this Application, the Debtors request that the Court approve the Indemnification Obligations, as outlined in the Engagement Letter, subject to the modifications set forth in the proposed retention order.

## THE FEE AND EXPENSE STRUCTURE IS APPROPRIATE AND REASONABLE

23.     The Debtors acknowledge and agree that Lazard's strategic and financial expertise as well as its capital markets knowledge, financing skills, restructuring capabilities, and mergers and acquisitions expertise, some or all of which may be required by the Debtors during the term of Lazard's engagement hereunder, were important factors in determining the Fee and Expense Structure, and the ultimate benefit to the Debtors of Lazard's services hereunder could not be measured by reference to the number of hours to be expended by Lazard's professionals in the performance of such services.

24.     The Debtors also acknowledge and agree that the Fee and Expense Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Lazard and its professionals hereunder and in light of the fact that (i) such commitment may foreclose other opportunities for Lazard and (ii) the actual time and commitment required of Lazard and its professionals to perform its services hereunder may vary substantially from week to week and month to month, creating "peak load" issues for Lazard.

25.     The Fee and Expense Structure summarized above and described fully in the Engagement Letter is consistent with Lazard's normal and customary billing practices for comparably sized and complex cases and transactions, both in and out-of-court, involving the services to be provided in connection with these chapter 11 cases. Moreover, the Fee and Expense Structure is consistent with and typical of arrangements entered into by Lazard and other financial advisors and investment banks in connection with the rendering of comparable services to clients such as the Debtors. The Debtors believe that the Fee and Expense Structure is both reasonable and market-based.

01:13990125.1

26. To induce Lazard to represent the Debtors, the Fee and Expense Structure was established to reflect the difficulty of the extensive assignments Lazard has undertaken and expects to undertake and to account for the potential for an unfavorable outcome resulting from factors outside of Lazard's control.

27. The Debtors and Lazard negotiated the Fee and Expense Structure to function as an interrelated, integrated unit, in correspondence with Lazard's services, which Lazard renders not in parts, but as a whole. It would be contrary to the intention of Lazard and the Debtors for any isolated component of the Fee and Expense Structure to be treated as sufficient consideration for any isolated portion of Lazard's services. Instead, the Debtors and Lazard intend that Lazard's services be considered as a whole that is to be compensated by the Fee and Expense Structure in its entirety.

28. The Debtors request authority to compensate and reimburse Lazard in accordance with the Engagement Letter for all services rendered and for all reasonable expenses incurred in connection with these chapter 11 cases. The Fee and Expense Structure was established to reflect the difficulty of the extensive assignments Lazard expects to undertake. Accordingly, the Debtors believe that the Fee and Expense Structure is fair and reasonable and market-based under the standards set forth in section 328(a) of the Bankruptcy Code.

29. The Debtors propose that all compensation and expenses will be sought in accordance with Bankruptcy Code section 328(a) and will not be subject to the standard of review in Bankruptcy Code section 330 and will not constitute a "bonus" or fee enhancement under applicable law.

## RECORD KEEPING AND APPLICATIONS FOR COMPENSATION

30. It is not the general practice of investment banking firms, including Lazard, to keep detailed time records similar to those customarily kept by attorneys and required by Local Rule 2016-2(d). Because Lazard does not ordinarily maintain contemporaneous time records in tenth-hour (.10) increments or provide or conform to a schedule of hourly rates for its professionals, pursuant to Local Rule 2016-2(g), Lazard should be excused from compliance with such information requirements set forth in Local Rule 2016-2(d). Lazard should be required to maintain time records in one-hour increments, not decimal hours, setting forth, in a summary format, a description of the services rendered by each professional and the amount of time spent on each date by each such individual in rendering services on behalf of the Debtors.

31. Lazard will also maintain detailed records of any actual and necessary costs and expenses incurred in connection with the aforementioned services. Lazard's applications for compensation and expenses will be paid by the Debtors pursuant to the terms of the Engagement Letter, in accordance with Local Rule 2016-2(e) and any procedures established by the Court.

## BASIS FOR RELIEF

32. The Debtors seek authority to employ and retain Lazard as their investment banker under section 327 of the Bankruptcy Code, which provides that a debtor is authorized to employ professional persons "that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out their duties under this title." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code elaborates upon sections 101(14) and 327(a) of the Bankruptcy Code in cases under chapter 11 of the Bankruptcy Code and provides that "a person is not disqualified for employment under section

327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

33. In addition, the Debtors seek approval of the Engagement Letter (including, without limitation, the Fee and Expense Structure and the Indemnification Obligations) pursuant to section 328(a) of the Bankruptcy Code, which provides, in relevant part, that the Debtors "with the court's approval, may employ or authorize the employment of a professional person under section 327. . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis. . . ." 11 U.S.C. § 328(a). Section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions. As the United States Court of Appeals for the Fifth Circuit recognized in <u>Donaldson Lufkin & Jenrett Sec. Corp. v. Nat'l Gypsum Co. (In re Nat'l Gypsum Co.)</u>, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

<u>Id.</u> at 862 (citations omitted), cited in <u>Riker, Danzig, Scherer, Hyland & Perretti LLP v. Official Comm. of Unsecured Creditors (In re Smart World Techs. LLC)</u>, 383 B.R. 869, 874 (S.D.N.Y. 2008). Owing to this inherent uncertainty, courts have approved similar arrangements that contain reasonable terms and conditions under section 328 of the Bankruptcy Code. <u>See, e.g.</u>, <u>In</u>

re U.S. Airways, Inc., Case No. 02-83984 (SJM) (Bankr. E.D. Va. Aug. 12, 2002); see also In re J.L. French Auto. Castings, Inc., Case No. 06-10119 (MFW) (Bankr. D. Del. March 24, 2006).

34. Furthermore, the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 328(a) of the Bankruptcy Code, which now provides as follows:

> The trustee, or a committee appointed under section 1102 of this title, with the court's approval, may employ or authorize the employment of a professional person under section 327 or 1103 of this title, as the case may be, on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, *on a fixed or percentage fee basis*, or on a contingent fee basis.

11 U.S.C. § 328(a) (amendment emphasized). This change makes clear that the Debtors are able to retain a professional on a fixed or percentage fee basis, such as the Fee and Expense Structure, with bankruptcy court approval.

35. The Engagement Letter appropriately reflects (i) the nature and scope of services to be provided by Lazard, (ii) Lazard's substantial experience with respect to financial advisory and investment banking services and (iii) the Fee and Expense Structure typically utilized by Lazard and other leading financial advisors and investment bankers that do not bill their clients on an hourly basis.

36. Similar fixed and contingency fee arrangements have been approved and implemented by courts in other large chapter 11 cases. See, e.g., In re Inspiration Biopharmaceuticals, Inc., Case No. 12-18687 (Bankr. D. Mass. Dec. 19, 2012); In re Broadview Networks Holdings, Inc., Case No. 12-13581 (Bankr. S.D.N.Y. Sept. 14, 2012); In re Circus and Eldorado Joint Venture, Case No. 12-51156 (Bankr. D. Nev. July 6, 2012); In re Delta Petroleum Corp., Case No. 11-14006 (Bankr. D. Del. Dec. 16, 2011); In re Trico Marine Services, Inc., Case No. 10-12653 (Bankr. D. Del. Aug. 5, 2010); In re CIT Group Inc., Case No. 09-16565 (Bankr. S.D.N.Y. Nov. 1, 2009); In re General Motors Corp., Case No. 09-50026 (Bankr. S.D.N.Y. June 1, 2009); In re Lyondell Chem. Co., Case No. 09-10023 (Bankr. S.D.N.Y. Jan. 6,

2009). Accordingly, the Debtors believe that Lazard's retention on the terms and conditions proposed herein is appropriate.

## LAZARD'S DISINTERESTEDNESS

37.     To the best of the Debtors' knowledge and except to the extent disclosed herein and in the O'Dowd Declaration: (i) Lazard is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code and does not hold or represent an interest materially adverse to the Debtors' estate with respect to the matter on which Lazard will be employed; and (ii) Lazard has no connection to the Debtors, their creditors or other parties in interest in these chapter 11 cases.

38.     As set forth in further detail in the O'Dowd Declaration, Lazard has certain connections with creditors, equity security holders and other parties in interest in these chapter 11 cases. All of these matters, however, are unrelated to these chapter 11 cases. Lazard does not believe that any of these matters represent an interest materially adverse to the Debtors' estate or otherwise create a conflict of interest regarding the Debtors or these chapter 11 cases.

39.     As of the Petition Date, the Debtors have paid Lazard $350,400.42 in fees and expenses, as further detailed below, under the current Engagement Letter, which includes $20,000.00 paid on account of estimated prepetition expenses incurred but not yet billed (if this estimated amount exceeds actual prepetition expenses, the balance will be applied to future approved fees and expenses) and $440.42 of actual prepetition expenses billed.

| Invoice Date | Invoiced Amount | Amount Received | Date Received |
|---|---|---|---|
| June 28, 2013 | $180,000.00 | $180,000 | July 8, 2013 |
| July 23, 2013 | $170,440.42 | $170,440.42 | July 30, 2013 |

40. The Debtors do not owe Lazard any amount for any services performed or expenses incurred prior to the Petition Date. Accordingly, Lazard is not a prepetition creditor of the Debtors.

## NOTICE

41. Notice of this Motion will be given to: (a) the U.S. Trustee; (b) Credit Suisse, AG, as the administrative agent under the Debtors' prepetition secured credit agreement and its counsel; (c) Wells Fargo, indenture trustee for the Debtors' senior unsecured notes and its counsel; (d) counsel to certain of the Debtors' senior unsecured noteholders; (e) the Debtors' fifty (50) largest unsecured creditors on a consolidated basis; and (f) all parties who have requested notice in these cases pursuant to Bankruptcy Rule 2002 as of the date of the filing of this Motion. The Debtors submit that, under the circumstances, no other or further notice is required.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order, substantially in the form annexed hereto as Exhibit B, granting the relief requested in the Motion and such other and further relief for the Debtors as may be just and proper.

Dated: Wilmington, Delaware
August 7, 2013

                                        Rural/Metro Corporation, et al.
                                        Debtors and Debtors in Possession

                                        _____
                                        Stephen Farber
                                        Authorized Signatory